Office of the Super...
De Deputy Clerk of...

JAN 1 7 2013

| | |
|---|---|
| COMPLETE DOCUMENT SOLUTIONS PA, LLC, | **SUPERIOR COURT OF NEW JERSEY** CHANCERY DIVISION, GENERAL EQUITY ESSEX COUNTY |
| Plaintiff, | DOCKET NO.: C-000014-13 |
| v. | Civil Action |
| BARONE CAPITAL LLC, JANICE BARONE & PETER BARONE, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF COMPLETE
DOCUMENT SOLUTIONS PA, LLC'S ORDER TO SHOW CAUSE
FOR A PRELIMINARY INJUNCTION**

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

*Attorneys for Plaintiff*
*Complete Document Solutions PA, LLC*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

LEGAL ARGUMENT ........................................................................................................... 6

POINT I ................................................................................................................................... 6

       PRELIMINARY INJUNCTIVE RELIEF SHOULD BE GRANTED IN ORDER
       THAT DEFENDANTS BE ENJOINED FROM ENGAGING IN COMPETITIVE
       ACTIVITIES WHICH CLEARLY VIOLATE THE RESTRICTIVE
       COVENANT ...................................................................................................................... 6

          A.    There is a Reasonable Probability that CDS Will Succeed on the
                 Merits ................................................................................................................. 6

               1.    The Restrictive Covenant is Fully Enforceable under New
                      Jersey Law and was Clearly Breached by Defendants ................. 7

                     (a)    The Restrictive Covenant Protects CDS' Legitimate
                            Business Interests............................................................... 8

                     (b)    The Restrictive Covenant Does Not Impose an
                            Undue Hardship on Defendants. ...................................... 10

                     (c)    Enforcement of the Restrictive Covenant Does Not
                            Adversely Impact the Public Interest. .............................. 12

                     (d)    The Restrictive Covenant is Limited in Geographic
                            and Temporal Scope. ........................................................ 12

               2.    Defendants Breached the Restrictive Covenants ......................... 14

               3.    Breach of the Implied Covenant of Good Faith and Fair
                      Dealing ............................................................................................ 16

                 4.    Unfair Competition .......................................................................... 17

                 5.    Tortious Interference with Contract and Prospective
                      Economic Advantage ....................................................................... 18

          B.    Defendants' Activities in Violation of the Restrictive Covenant
                 Has Caused and Will Continue to Cause CDS to Suffer Irreparable
                 Harm. ................................................................................................. 19

          C.    A Balance of the Equities Favor Granting the Preliminary
                 Injunction ......................................................................................... 20

POINT II ................................................................................................................................. 21

# TABLE OF CONTENTS
(continued)

Page

EXPEDITED DISCOVERY IS APPROPRIATE IN THIS MATTER TO
PERMIT CDS TO ASCERTAIN THE SCOPE AND EXTENT OF
DEFENDANTS' COMPETITIVE ACTIVITIES AND RESULTING
DAMAGES......................................................................................................... 21

CONCLUSION.......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

A.T. Hudson & Co. v. Donovan,
216 N.J. Super. 426 (App. Div. 1987) ................................................................. 9

Alexander & Alexander, Inc. v. Danahy,
21 Mass App. Ct. 488 (Mass. Ct. App. 1986)...................................................... 14

Atlantic Northern Airlines, Inc. v. Schwimmer,
12 N.J. 293 (1953) ............................................................................................... 15

Boardwalk Regency Corp. v. Attorney General of State of N.J.,
188 N.J. Super. 372 (Law Div. 1982)................................................................... 23

Borough of Princeton v. Board of Chosen Freeholders of County of Mercer,
333 N.J. Super. 310 (App. Div. 2000) ................................................................. 15

Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Ass'n,
182 N.J. 210 (2005) ............................................................................................. 16

Business Records Corp. v. Lueth,
981 F.2d 957 (7th Cir. 1992) ............................................................................... 14

Charles Gendler & Co., Inc. v. Telecom Equipment Corp.,
102 N.J. 460 (1986) ............................................................................................. 22

City of Orange Township v. Empire Mortgage Services, Inc.,
341 N.J. Super. 216 (App. Div. 2001) ................................................................. 15

Cmty. Hosp. Group, Inc. v. More,
83 N.J. 36 (2005) ................................................................................................. 10

Cmty. Hosp. Grp. Inc. v. More,
365 N.J. Super. 84 (App. Div. 2003), aff'd in part, rev'd in part, 183 N.J.
36 (2005)............................................................................................................... 20

Columbia Broad. Sys. v. Melody Recordings,
134 N.J. Super. 368 (App. Div. 1975) ................................................................. 17

Conway v. 287 Corporate Center Assoc.,
187 N.J. 259 (2006) ............................................................................................. 15

Coskey's Television & Radio Sales and Service, Inc. v. Foti,
253 N.J. Super. 626 (App. Div. 1992) ................................................................... 7

Coyle v. Englander,
   199 N.J. Super. 212 (App. Div. 1985) ................................................................. 14

Crowe v. DeGioia,
   90 N.J. 126 (1982) ........................................................................... 6, 7, 20

Cumberland County Improvement Authority v. GSP Recycling Co.,
   358 N.J. Super. 484 (App. Div. 2003) ................................................................ 15

Harris v. Perl,
   41 N.J. 455 (1964) ....................................................................................... 17

Heuer v. Rubin,
   1 N.J. 251 (1949) ......................................................................................... 7

In re Big V Holding Corp.,
   267 B.R. 71 (D.N.J. 2001) ......................................................................... 16, 17

Jiffy Lube Int'l v. Weiss Bros,
   834 F.Supp. 683 (D.N.J. 1993) ..................................................................... 7, 8

Kadi v. Massotto,
   2008 N.J. Super. Unpub. LEXIS 2008 (App. Div. Nov. 10, 2008) ........................ 8, 10, 11, 13

Kampf v. Franklin Life Ins. Co.,
   33 N.J. 36 (1960) ........................................................................................ 15

Karlin v. Weinberg,
   77 N.J. 408 (1978) .................................................................................. 12, 14

Lyons v. Premo Pharmaceutical Labs, Inc.,
   170 N.J. Super. 183 (App. Div. 1979) ............................................................... 22

M.J. Paquet, Inc. v. New Jersey Dep't of Transp.,
   171 N.J. 378 (2001) ..................................................................................... 15

Macopoulos v. Walt Disney World, Inc.,
   221 N.J. Super. 513 (App. Div. 1987) ............................................................... 22

Mailman, Ross, Toyes & Shapiro v. Edelson,
   183 N.J. Super. 434 (Ch. Div. 1982) .................................................................. 9

Maw v. Advanced Clinical Commc'ns, Inc.,
   179 N.J. 439 (2004) ................................................................................... 9, 10

Meadox Medicals, Inc. v. Life Sys., Inc.,
   3 F.Supp. 2d 549 (D.N.J. 1998) ........................................................................ 8

Mohawk Maintenance Co., Inc. v. Kessler,
   52 N.Y.2d 276 (N.Y. App. Ct. 1981) ................................................................. 13

Nat'l Reprographics, Inc. v. Strom,
   621 F.Supp. 2d 204 (D.N.J. 2009) ................................................................. 12

Nestor v. O'Donnell,
   301 N.J. Super. 198 (App. Div. 1997) ........................................................... 15

News Printing Co. v. Borough of Totowa,
   211 N.J. Super. 121 (Law Div. 1986) ............................................................ 20

Palisades Properties, Inc. v. Brunetti,
   44 N.J. 117 (1965) .......................................................................................... 17

Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,
   143 F.3d 800 (3d Cir. 1998) ........................................................................... 20

Platinum Management, Inc. v. Dahms,
   285 N.J. Super. 274 (Law Div. 1995) .............................................................. 9

Poff v. Caro,
   228 N.J. Super. 370 (Law Div. 1987) .............................................................. 7

Pogostino v. Leighton,
   216 N.J. Super. 363 (App. Div. 1987) ...................................................... 22, 23

Printing Mart-Morristown v. Sharp Elecs. Corp.,
   116 N.J. 739 (1989) ........................................................................................ 18

Rubel & Jensen Corp. v. Rubel,
   85 N.J. Super. 27 (App. Div. 1964) ................................................................ 13

Ryan v. Carmona Bolen Home for Funerals,
   341 N.J. Super. 87 (App. Div. 2001) .............................................................. 18

Sarco Co. of New Jersey v. Gulliver,
   3 N.J. Misc. 641 (Ch. 1925), affirmed o.b. 99 N.J. Eq. 432 (E & A 1926) ............................. 13

Schor v. FMS Financial Corp.,
   357 N.J. Super. 185 (App. Div. 2002) ............................................................ 15

Simon v. Oldsmans Tp.,
   203 N.J. Super. 365 (Ch. Div. 1985) .............................................................. 22

Sneath v. Lehsten,
   120 N.J. Eq. 327 (1936) .................................................................................. 19

Solari Industries, Inc. v. Malady,
   55 N.J. 571 (1970) ............................................................................................ 8

Sons of Thunder Inc. v. Borden, Inc.,
   148 N.J. 396 (1997) ........................................................................................ 16

Stiefel v. Bayly, Martin & Fay, Inc.,
  242 N.J. Super. 198 (App. Div. 1990) .......................................................... 15

Subcarrier Communications, Inc. v. Day,
  299 N.J. Super. 634 (App. Div. 1997) .......................................................... 19

Sustick v. Slatina,
  48 N.J. Super. 134 (App. Div. 1957) ............................................................ 18

U.S. Lubes, LLC v. Consolidated Motor Oils,
  Inc.,
  2008 N.J. Super. Unpub. LEXIS 2799 (App. Div. Jan. 16, 2008)................ 14

United Cigar Stores Co. of America v. United Confectioners,
  92 N.J. Eq. 449 (1921) .................................................................................. 19

Watson v. City of East Orange,
  175 N.J. 442 (2003) ....................................................................................... 15

Wear-Ever Aluminum, Inc. v. Townecraft Indus., Inc.,
  75 N.J. Super 135 (Ch. Div. 1962) ............................................................... 17

Whitmyer Bros., Inc. v. Doyle,
  58 N.J. 25 (1971) ............................................................................................. 8

Wilson v. Amerada Hess Corp.,
  168 N.J. 236 (2001) ....................................................................................... 16

Wright Med. Tech., Inc. v. Somers,
  37 F. Supp. 2d 673 (D.N.J. 1999) ................................................................. 20

Zon. Bd. of Adj. v. Serv. Elec. Cable T.V.,
  198 N.J. Super. 370 (App. Div. 1985) ............................................................ 6

This brief is submitted on behalf of Plaintiff Complete Document Solutions PA, LLC ("CDS"), in support of its application for the entry of a preliminary injunction against Defendants Barone Capital LLC ("Barone Capital"), Janice Barone and Peter Barone (collectively "Defendants").

## PRELIMINARY STATEMENT

By way of Verified Complaint and Order to Show Cause, Plaintiff CDS seeks a preliminary injunction to enforce the terms of a restrictive covenant contained in a Relinquishment of Rights Agreement executed by Peter and Janice Barone, on behalf of themselves and Barone Capital, and S. Salman Javed and John Hand on behalf of CDS. Since 1996, CDS, or its affiliates, has functioned as an agent of Xerox hardware, software and services, with the exclusive right to market and serve the Northeastern territory covering areas from New York to Washington, D.C. Barone Capital, for some period, was authorized to sell Xerox equipment in southern New Jersey and parts of Pennsylvania and Virginia.

After learning that Barone Capital consistently struggled to meet its sales goals and may, as a result, be released as an agent by Xerox, CDS offered to purchase Barone Capital's right to service the southern New Jersey, Philadelphia, and Virginia areas. These discussions culminated in a September 30, 2011 agreement, whereby CDS promised to pay $500,000 for the exclusive right to sell Xerox equipment in Barone Capital's area. To ensure the full benefit of the bargain, the parties agreed that Barone Capital would not compete against CDS in its print-related business for five (5) years. The territory covered by the covenant included Barone Capital's previous territory, CDS' exclusive territory and some opportunity for CDS' reasonable business expansion. The restrictions were therefore reasonably limited in subject matter, duration and geography.

Barone Capital has cashed the checks provided to it by CDS but has blatantly refused to honor its obligations. Despite the clear restrictions, Barone Capital and Peter Barone have been soliciting -- and in fact stealing -- business from CDS by continuing to conduct print-related business with its former customers within the restricted territory. As set forth below, CDS can establish a reasonable likelihood of success on the merits of its claims because, notwithstanding a reasonable bargained-for and separately purchased agreement to wait five (5) years before soliciting customers, Barone Capital has, within two (2) years, brazenly and unapologetically violated that agreement and irreparably damaged Plaintiff. And, undoubtedly he will continue to do so unless this Court intervenes. Under the circumstances, a preliminary injunction is warranted.

## STATEMENT OF FACTS

CDS, in its capacity and through its affiliates, has been an exclusive authorized agent of Xerox hardware and software since 1996.   See Verified Complaint ("V. Compl.") at ¶ 9. Through its hard work and dedication, CDS had secured the exclusive rights as an agent to sell Xerox equipment in areas covering New York to Washington, D.C. Id. Barone Capital was also in business with Xerox, having itself secured the right to serve customers in southern New Jersey and parts of Pennsylvania (together, the "Philadelphia Metropolitan Area").[1] Id. at ¶ 10.

Barone Capital suffered from an inability to consistently meet its sales quotas and, as a result, was in danger of losing its exclusive dealership rights with Xerox. Id. at ¶ 11. CDS sought to take advantage of an opportunity, as well as bail-out Barone Capital, by offering to purchase the rights to service the Philadelphia Metropolitan Area. Id. at ¶ 14. Negotiation to purchase the territory proved fruitful as CDS was led to believe that Barone Capital wanted to stop selling Xerox equipment and instead wished to focus its efforts on growing an information technology ("IT") business. Id. at ¶ 12. Indeed, upon information and belief, Peter Barone has been industrious in furtherance of those goals, by using a Barone Technology Group, a company he used while he was working as a Xerox agent, for IT and office automation services. Id. at ¶¶ 13-14.

To consummate the purchase and transfer, Xerox, along with CDS and Barone Capital, executed a series of documents on or about September 30, 2011, the result of which was that CDS would add the Philadelphia Metropolitan Area and parts of Virginia to its existing territories. One such document is a Mutual Termination Agreement, which -- as the name suggests -- terminated all of Barone Capital's prior Xerox agency agreements. See V. Compl. at

---

[1] Barone Capital also had an interest in Leesburg Office Equipment Inc. ("Leesburg") and Document Technologies Inc. ("Document Technologies"), which had the exclusive Xerox territory in northern Virginia.  See V. Compl. at ¶ 18.

¶ 16, Ex. A.   In addition, Xerox and CDS entered into a Mutual Extension Amendment, pursuant to which CDS and Xerox agreed to execute an Agent/Dealer Agreement.[2]  Id. at ¶ 17, Ex. B.   Finally, CDS and Barone Capital entered into a Relinquishment of Rights Agreement ("the Agreement"), whereby Barone Capital, Peter Barone and Janice Barone agreed to relinquish its rights to sell Xerox equipment in exchange for payments totaling $500,000.  Id. at ¶ 19, Ex. C.

In addition to the payment schedule and Barone's relinquishment of rights, a covenant not to compete, which limited Barone Capital, Peter Barone and Janice Barone's post-deal activities was negotiated directly into the Relinquishment of Rights Agreement.  Id.  The non-compete provision, labeled "Restrictive Covenant" and provides, in pertinent part, that:

> For a period of five (5) years following the Effective Date, the [Defendants] … shall not ... engage or become interested financially or otherwise, within the States of New York, New Jersey, Pennsylvania, Delaware, Maryland and Virginia (the "Restricted Territory") in any business which in any way competes with CDS ...

Id. at ¶ 21, Ex. C, § 7(a).  Fully aware of Defendants need to make a living and desire to focus his attention away from sales and onto IT and service, the restrictive covenant is reasonably limited to CDS' and Barone's former, current and new customers in the companies' print related business.  See id.  Thus, Barone would be free to continue growing his IT business and could, in fact, due so using his existing customers.

The parties were also aware when signing the Relinquishment of Rights Agreement that a breach of the Restrictive Covenant will cause serious damage to the Plaintiff.  This fact is acknowledged explicitly in Section 7(b).  See V. Compl. at ¶ 23, Ex. C.

---

[2] The Agent/Dealer Agreement referenced in the Mutual Extension Amendment was executed by and between CDS and Xerox the following day, October 1, 2011.  That agreement amended its prior agreements with CDS by, among other things, expanding its territory and altering its sales performance goals.  See V. Compl. at ¶ 17.

4

Further, as mentioned above, the Agreement required CDS to pay $500,000 for Barone Capital's relinquishment of rights "and as full payment for the restrictive covenant set forth in Section 7." Id. at ¶ 25, Ex. C, § 2(a). The payment schedule included an immediate wire transfer of $100,000 followed by 59 monthly payments of $4,237.29 and a final lump sum payment of $150,000 due sixty months following the effective date of the Agreement. Id. at ¶¶ 26-27, Ex. C. § 2(b)(i)-(iii). Plaintiff has made its payments on time and indeed is not due to make another payment until April, 2013. Id. at ¶ 28. Thus far, Defendants have received over $150,000 from Plaintiff pursuant to the Agreement. Id.

Despite cashing the checks, Defendants have unabashedly dishonored the Restrictive Covenant. Id. at ¶ 29. Defendants have been soliciting CDS' customers and, in fact, stealing its business. Id. at ¶ 30. For example, CDS learned that, in or about September 2012, Defendants contacted Intercultural Services, a long-time customer of CDS, to solicit its business. Id. at ¶ 31. Additionally, Triumph Baptist Church has been a Xerox customer for over twenty (20) years, and in August 2012, Plaintiff was informed by Triumph that it had been solicited by a Barone Capital employee. Id. at ¶ 32. Renaissance Benefit Advisors, another CDS customer, indicated that it would sign a lease agreement with Plaintiff for new Xerox equipment. Id. at ¶ 33. But, when CDS called to finalize the lease arrangement, it was informed that Renaissance had already signed a comparable deal with Defendants for the same equipment. Id., Ex. D In addition, Downe Township Municipal, another established CDS customer, informed Plaintiff that it was successfully solicited by Peter Barone, which resulted in the customer entering into an equipment deal with Defendants. Id. at ¶ 34. Perhaps most enlightening is Peter Barone's admission to Plaintiff's President, S. Salman Javed, that he has breached and will continue to breach the Agreement. Id. at ¶ 35.

5

Plaintiff believes that Defendants clear and brazen violations of the Restrictive Covenant contained in the Agreement are but the tip of a vast iceberg and expedited discovery is warranted to allow Plaintiff to investigate the extent of Defendants breaches.  Simply stated, Defendants' conduct is impermissible and must not be countenanced.  As such, the Court should order preliminary injunctive relief to restrain Defendants from continuing to violate its agreement with CDS and to protect CDS' legitimate business interests.

## LEGAL ARGUMENT

### POINT I

**PRELIMINARY INJUNCTIVE RELIEF SHOULD BE GRANTED IN ORDER THAT DEFENDANTS BE ENJOINED FROM ENGAGING IN COMPETITIVE ACTIVITIES WHICH CLEARLY VIOLATE THE RESTRICTIVE COVENANT.**

New Jersey courts have the authority to grant injunctive relief to "prevent some threatening, irreparable mischief, which should be averted until opportunity is afforded for a full and deliberate investigation of the case." Crowe v. DeGioia, 90 N.J. 126, 132 (1982).  A preliminary injunction "must be administered with sound discretion and always upon consideration of justice, equity, and morality in a given case." Zon. Bd. of Adj. v. Serv. Elec. Cable T.V., 198 N.J. Super. 370, 379 (App. Div. 1985).

The Supreme Court of New Jersey has found that an injunction should issue when:

(1)    The plaintiff has made a preliminary showing of a reasonable probability of ultimate success on the merits;

(2)    The injunction is necessary to prevent irreparable harm; and

(3)    The relative hardships to the parties have been considered by the Court and favor the granting of temporary relief.

Crowe, 90 N.J. at 132-34.  Here, Plaintiff satisfies the preliminary injunction test criteria.

6

A.    **There is a Reasonable Probability that CDS Will Succeed on the Merits.**

"[T]o prevail on an application for temporary relief, a plaintiff must make a preliminary showing of a reasonable probability of ultimate success on the merits." Crowe, 90 N.J. at 133. Probability of success is not, however, akin to "certainty" of success. Id. "Mere doubt as to the validity of the claim is not an adequate basis" to deny preliminary injunctive relief. Poff v. Caro, 228 N.J. Super. 370, 375 (Law Div. 1987) (citing Crowe, 90 N.J. at 133). Here, the probability of ultimate success is far more than reasonable. It is indisputable that Defendants negotiated a substantial payment in exchange for an agreement to relinquish their rights to serve as a Xerox agent in the Restricted Territory. The terms of Defendants' restriction are reasonable have been indisputably breached. As explained below, Plaintiff is likely to ultimately succeed on its claims alleging breach of contract, breach of the implied duty of good faith and fair dealing, tortious interference and unfair competition.

1.    **The Restrictive Covenant is Fully Enforceable under New Jersey Law and was Clearly Breached by Defendants**

Restrictive covenants in agreements ancillary to the sale of a business "are accorded far more latitude" than those appearing in employment contracts. Coskey's Television & Radio Sales and Service, Inc. v. Foti, 253 N.J. Super. 626, 633 (App. Div. 1992). There are valid reasons to support the varied treatment:

> [I]f a retail store is purchased at a particular location, the seller receives payment for the goodwill generated at that location, recognizing that customers would be inclined to continue shopping at the facility. See Heuer v. Rubin, 1 N.J. 251, 256 (1949). For the seller to thereafter trade on that good will by reopening within the competitive area would destroy the essence of the transaction.

Id. Courts therefore recognize that when the sale of a business is involved, the parties have more equal bargaining power than when an employer restricts the future activities of an employee. Jiffy Lube Int'l v. Weiss Bros, 834 F.Supp. 683, 691 (D.N.J. 1993). Thus, restrictive covenants

agreed upon in conjunction with the sale of a business are "freely enforceable."  Solari
Industries, Inc. v. Malady, 55 N.J. 571, 576 (1970).  See also Meadox Medicals, Inc. v. Life Sys.,
Inc., 3 F.Supp. 2d 549, 552, n. 2 (D.N.J. 1998) ("New Jersey courts freely enforce restrictive
covenants against sellers of businesses because . . . the buyer is in essence purchasing the seller's
customer relationships outright.  The restrictive covenant protects the buyer's bargained-for
assurance that the seller will not retain that which he has sold").  Here, CDS agreed to pay
Defendants $500,000 for the bargained-for exclusive right to sell Xerox equipment in the
Restricted Territory without interference from Defendants.  See V. Compl. at ¶ 25, Ex. C.

Non-compete agreements are enforceable if "reasonable," and when determining the
reasonableness of any such agreement, New Jersey courts must apply the three-part test
developed in Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 32-33 (1971) and Solari, 55 N.J. at 576.
Under the Solari/Whitmyer test, a promise not to compete will be valid and enforceable so long
as it (1) protects a legitimate business interest; (2) imposes no undue hardship on the restricted
individual or entity; and (3) is not injurious to the public interest.  Id. (citations omitted).
Because of the difference between employment covenants and those ancillary to the sale of a
business, courts will use a more flexible and lenient application of the Solari/Whitmyer test in
situations such as presented here.  See Jiffy Lube, 834 F.Supp. at 691 (explaining the court's
deference given to restrictive covenants made in connection with the sale of a business).  See
also Kadi v. Massotto, 2008 N.J. Super. Unpub. LEXIS 2008, *12 (App. Div. Nov. 10, 2008)
("[i]t is undisputed that under New Jersey law, restrictive covenants in agreements for the sale of
a business are given more deference than those appearing in employment contracts.").  The
restrictive covenant at issue here is fully enforceable when viewed through the more lenient
application of the Solari/Whitmyer test.

      **(a)**     **The Restrictive Covenant Protects CDS' Legitimate Business Interests.**

The first prong of the Solari/Whitmyer test requires the court to consider whether the covenant protects the purchaser's legitimate business interest. Maw v. Advanced Clinical Commc'ns, Inc., 179 N.J. 439, 447 (2004). It is well-settled that New Jersey businesses have a legitimate interest in the protection of their customer relationships. Specifically, "an employer's ongoing professional relationship with its client is generally recognized as a legitimate business interest which may be protected through a restrictive covenant." Mailman, Ross, Toyes & Shapiro v. Edelson, 183 N.J. Super. 434, 440 (Ch. Div. 1982). See also Whitmyer, 58 N.J. at 33 ("[T]he employer has a patently legitimate interest in protecting his trade secrets as well as his confidential business information and he has an equally legitimate interest in protecting his customer relationships"); A.T. Hudson & Co. v. Donovan, 216 N.J. Super. 426, 433 (App. Div. 1987) ("While an employer may not prevent competition as such, he does have a legitimate interest in protecting his customer relationships").

Here, Plaintiff has every right to protect its customer relationships from Defendants. In fact, Defendants agreed -- in exchange for half a million dollars -- to not interfere with those relationships. In significant respects, this case is similar to Platinum Management, Inc. v. Dahms, 285 N.J. Super. 274 (Law. Div. 1995). There, Platinum Management, Inc. ("PMI"), a toy company, filed an action against the defendant, who was a former company Vice President. The action sought to enforce restrictions, including a non-compete agreement. In discussing the nature of defendant's prior employment, the court explained that as Vice President of Sales, defendant had access to the company's pricing policy and sales strategy. Id. The non-compete covenant recognized the defendant's employment status and the damage he could inflict through the misuse of knowledge acquired while employed with the company. Id. at 294. As a result of

defendant's status within the company -- and his free access to confidential information -- the Court enforced the non-compete agreement. Id.

Analogously, Barone Capital was an exclusive Xerox agent in the Philadelphia Metropolitan Area. See V. Compl. at ¶ 10. Barone Capital also had a controlling interest in Leesburg and Document Solutions that were the exclusive Xerox dealers in northern Virginia. Id. at ¶18. As prior agents, Defendants had access to and knowledge of confidential information, including customer information, pricing, and marketing strategies. Accordingly, as in Dahms, CDS is entitled to protect its customer relationships from Defendants, especially since it paid a significant sum specifically for that protection.

**(b)     The Restrictive Covenant Does Not Impose an Undue Hardship on Defendants.**

Next, enforcement of the restrictions will not impose an undue hardship upon Defendants, thereby satisfying the second prong of the Solari/Whitymer test. Maw, 179 N.J. at 447. Consideration of this prong requires the court to determine "the likelihood of the employee finding other work in his or her field," and the burden [of] the restriction. Cmty Hosp. Group, Inc. v. More, 83 N.J. 36, 59 (2005). So long as the defendant is allowed to earn a living, courts will not find undue hardship. For example, in Kadi v. Massotto, the litigation involved the defendant's consent to forego competing with the plaintiff's dental consulting business:

> for ten (10) years in New York, New Jersey, Connecticut and Pennsylvania; for five (5) years in any state east of the Mississippi River (other than the states named above); and for three years in any state west of the Mississippi River, excluding Arizona.

2008 N.J. Super Unpub. LEXIS at *4-5. Even with such broad geographical restrictions with relatively long durations, the reviewing court concluded that adherence to the agreement would not result in an undue hardship because defendant would not be prevented from earning a living

10

by providing dental services to clients in Arizona or providing non-dental consulting services anywhere in the country. Id. at *9.

The covenant at issue here is far less onerous than that which was upheld by the Appellate Division in Kadi. Here, the restrictive covenant was purposely limited and explicitly tailored to the Defendants situation and took into account his future plans to focus his business on service and IT. See V. Compl. at ¶¶ 11-14. Defendants had been struggling to meet expected sales projections which resulted in the serious possibility that Xerox would drop them as authorized agents. Id. Defendants and Plaintiff then negotiated covenants that would be appropriately protective of CDS' interests but would also permit Barone Capital to continue down its chosen path. Id. at ¶ 15. To achieve this delicate balance, the covenant expressly provides that the restrictions be:

> limited to CDS' and the Barone Entities' ... former ... current and new customers of CDS' and the Barone Entities' print related business in the Restricted Territory.

Id. at ¶ 21, Ex. C, § 7(b). Thus, far from being prevented from earning a living, Defendants are free to pursue their stated focus. Indeed, upon information and belief, Peter Barone is using "Barone Technology Group," to focus on technology and office automation, which does not violate the carefully carved-out restrictions negotiated in its agreement with CDS. See V. Compl. at ¶ 14. Moreover, the covenant does not prevent Defendants from engaging in sales that do not compete with CDS' print related businesses. Additionally, Defendants can, of course, engage in any activities -- print related or not -- outside of the restricted territory or within the restricted territory after September, 2016. Clearly, enforcement of the restrictive covenant does not therefore result in an undue hardship for Defendants. See also Dahms, 285 N.J. Super. at 298-99 (finding no undue hardship where covenant did not prevent defendant from earning a living or working within the same industry); Nat'l Reprographics, Inc. v. Strom, 621 F.Supp. 2d

11

204, 228-29 (D.N.J. 2009) (applying New Jersey Law and finding no undue hardship to defendant who was not restricted from working outside of protected radius and was, therefore, not prevented from earning a living).

> **(c)      Enforcement of the Restrictive Covenant Does Not Adversely Impact the Public Interest.**

Lastly, enforcement of the restrictive covenant does not adversely impact the public interest. Analysis of this prong focuses on the demand for the services rendered by the restricted person or entity and the likelihood that those services could be provided by others in the area. Karlin v. Weinberg, 77 N.J. 408, 424 (1978). Here, there is no public impact. Prior to entering into the agreement with CDS, Defendants were exclusive Xerox agents in the Philadelphia Metropolitan Area, while CDS serviced other areas in the Northeast. CDS purchased the right to service Defendants former territory, which would not at all impact those customers.

> **(d)      The Restrictive Covenant is Limited in Geographic and Temporal Scope.**

With all three Solari/Whitmyer factors satisfied, the Court must next examine the geographic and temporal scope of the covenant. In the sale of a business context, covenants such as the one at issue here are essential because the buyer of a business must be permitted to prevent the seller from recapturing and utilizing, by competition, the goodwill of the very business it was paid to transfer. A purchaser -- like CDS -- who acquires the goodwill of a business pays for the seller's implied promise to transfer the loyalties of the seller's customers to the buyer and obtains the exclusive right, as between the buyer and seller, to service those customers. In connection with the purchase of a business, the seller should implicitly promise -- even absent an explicit covenant -- to stay away from the customers of the business it is selling to avoid impairing the goodwill of the business. While here the obligation is for only five years, in theory, it could be indefinite. See Mohawk Maintenance Co., Inc. v. Kessler, 52 N.Y.2d 276, 286 (N.Y. App. Ct.

1981) ("a man may not derogate from his own grant; the vendor is not at liberty to destroy or depreciate the thing which he has sold; there is an implied covenant, on the sale of goodwill, that the vendor does not solicit the custom which he has parted with; it would be a fraud on the contract to do so") (quotations and citations omitted).

Here, Defendants promised -- in exchange for $500,000 -- to wait at least five (5) years before engaging in a competing print-related business in New York, New Jersey Pennsylvania, Delaware and Virginia. Id. at ¶ 25, Ex. C. New Jersey courts have routinely held that a five (5) year restriction, particularly when ancillary to the sale of a business, is not an unreasonable duration. In Rubel & Jensen Corp. v. Rubel, 85 N.J. Super. 27 (App. Div. 1964), for example, plaintiff sought to enforce a restrictive covenant whereby the defendant-seller agreed not to solicit any of plaintiff's retail fuel distribution or heating equipment customers for a period of five (5) years. In upholding the reasonableness of the time restriction, the Court explained that "covenants for much longer periods have been upheld as enforceable." Id. at 35. Further, in reaching its conclusion, the Rubel Court quoted extensively from Sarco Co. of New Jersey v. Gulliver, wherein it was stated that:

> So many covenants with a 5-year limitation have been upheld and enforced in this court that the question of the reasonableness of that period needs no further argument, especially when considered in conjunction with the facts of this case, the character of the business, the length of time complainant and its predecessor had been building up the business, and the unlimited period of claimant's corporate existence.

Id. at 36 (quoting Sarco Co. of New Jersey v. Gulliver, 3 N.J. Misc. 641, 645 (Ch. 1925), affirmed o.b. 99 N.J. Eq. 432 (E & A 1926)).

More recent cases in New Jersey and elsewhere have also upheld restriction periods of five years or more. See e.g. Kadi, 2008 N.J. Super. Unpub. 2008 (not disturbing arbitration decision which enforced covenant prohibiting defendant from conducting business in the New

13

York Metropolitan Area for ten (10) years); U.S. Lubes, LLC v. Consolidated Motor Oils, Inc., 2008 N.J. Super. Unpub. LEXIS 2799 (App. Div. Jan. 16, 2008) (enforcing non-compete clause prohibiting asset seller from soliciting purchaser's customers for five (5) years); Business Records Corp. v. Lueth, 981 F.2d 957, 958-59 (7th Cir. 1992) (upholding restrictive covenant that effectively gave the purchaser of a business eight (8) years of protection); Alexander & Alexander, Inc. v. Danahy, 21 Mass App. Ct. 488, 498 (Mass. Ct. App. 1986) (applying standards applicable to covenants not to compete arising out of sale of a business and concluding that for purposes of preliminary injunctive relief, five years was not unreasonably long period); Karlin, 77 N.J. at 408 (enforcing five (5) year non-compete covenant). Thus, the cases are clear that a five year restriction in the context of Defendants selling its rights to serve as Xerox agent has been established as reasonable in New Jersey.

Likewise, preventing Defendants from engaging in print-related business in the areas serviced by CDS is also reasonable. Prior to its agreement with Plaintiff, Defendants were authorized by Xerox to serve as an agent in the Philadelphia Metropolitan Area and parts of Virginia through an affiliate. See V. Compl. at ¶¶ 10, 18. Plaintiff held exclusive agent rights to service territories spanning from New York to Washington, D.C., with plans to expand into Virginia. Id. at ¶ 9. As part its agreement to relinquish its rights as exclusive Xerox agents, Defendants agreed not to solicit its former customers or CDS' print-related business customers located anywhere from New York to Virginia. Id. at ¶¶ 21-22. This agreement was more than reasonable.

## 2.     **Defendants Breached the Restrictive Covenants**

Under New Jersey law, the elements of a cause of action for a breach of contract are: (1) the existence of a valid contract, (2) defective performance by the defendant, and (3) resulting damages. See Coyle v. Englander, 199 N.J. Super. 212, 223 (App. Div. 1985). The starting

point in interpreting a contract under New Jersey law is the language of the contract itself. See Borough of Princeton v. Board of Chosen Freeholders of County of Mercer, 333 N.J. Super. 310, 325 (App. Div. 2000), aff'd, 169 N.J. 135 (2001). The terms of a contract must be given their "plain and ordinary meaning," and the court "should not torture the language of [a contract] to create ambiguity." Schor v. FMS Financial Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (citations and internal quotation marks omitted); see also Nestor v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Stiefel v. Bayly, Martin & Fay, Inc., 242 N.J. Super. 198, 210 (App. Div. 1990)). Additionally, contractual provisions are not to be read in isolation; instead "[t]he document must be read as a whole," Cumberland County Improvement Authority v. GSP Recycling Co., 358 N.J. Super. 484, 496 (App. Div. 2003), and the language of the contract "taken in its entirety." Conway v. 287 Corporate Center Assoc., 187 N.J. 259, 269 (2006) (quoting Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301 (1953)). Where, as here, the terms of a contract are clear and unambiguous, the contract may be interpreted as a matter of law, and the court must enforce the contract as written. See Watson v. City of East Orange, 175 N.J. 442, 447 (2003) (citing M.J. Paquet, Inc. v. New Jersey Dep't of Transp., 171 N.J. 378, 396 (2001); Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960); City of Orange Township v. Empire Mortgage Services, Inc., 341 N.J. Super. 216, 224 (App. Div. 2001).

Here, Defendants have completely and blatantly disregarded the terms and conditions of the Relinquishment of Rights Agreement and the restrictive covenant contained within it. In direct violation of the agreement, Defendants have solicited at least four of its former customers before expiration of the five year restriction period. See V. Compl. at ¶¶ 29-34. The fact of Defendants breach is beyond cavil. Defendant Peter Barone has admitted to competing in

violation of the Agreement, and indicated that he will continue to do so. Id. at ¶ 35. Defendants have contacted Intercultural Services, a CDS customer, to solicit business. Id. at ¶ 31. It has also contacted Triumph Baptist Church, a twenty-year Xerox customer, and provided upgrade and pricing information with the intention of taking business directly from CDS. Id. at ¶ 32. Even more egregious is Defendants' contact with its former client, Renaissance Benefit Advisors, located in Jamison, Pennsylvania. Id. at ¶ 33. In November, 2012, Plaintiff met with representatives of Renaissance regarding the lease of new Xerox equipment. Id. Believing the deal done, Plaintiff contacted Renaissance the following month for final execution. Id. It was then that Renaissance informed Plaintiff that not only had it been solicited by Defendants, but that it had signed an agreement with Defendants for the same equipment being proposed for leasing by the Plaintiff. Id. Plaintiff has been able to secure of copy of Renaissance's lease with Barone Capital which is clear, definitive, and indefensible proof that the restrictive covenant has been breached. Id., Ex. D.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff is also likely to prevail on its claim that Defendants breached the implied covenant of good faith and fair dealing. Every contract entered into in New Jersey contains this covenant. Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Ass'n, 182 N.J. 210, 224 (2005). The purpose of the implied duty of good faith and fair dealing is to ensure that the reasonable expectations of the parties to an agreement are met. Sons of Thunder Inc. v. Borden, Inc., 148 N.J. 396, 421 (1997); In re Big V Holding Corp., 267 B.R. 71, 110 (D.N.J. 2001). Parties must not violate "community standards of decency, fairness or reasonableness" when performing their contractual duties. Wilson v. Amerada Hess Corp., 168 N.J. 236, 245 (2001). Good faith conduct requires each party to adhere "to an agreed common purpose and consistency with the justified expectations of the other party." Id. Further, the good faith and fair dealing

16

covenant requires that each party refrain from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." In re Big V Holding Corp., 267 B.R. at 110 (quoting Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 130 (1965)).

Here, Defendants' conduct has deprived Plaintiff of the fruits of its contract. Plaintiff was already an exclusive Xerox agent in New York, New Jersey and other parts of the northeast. It agreed to pay $500,000.00 -- and has already paid over $150,000.00 -- in order to expand its reach into southern New Jersey, and parts of Pennsylvania and Virginia. See V. Compl. at ¶ 28, Ex. C. Defendants have used the knowledge and relationships gained during its time as agent to engage in direct competition with Plaintiff. Such conduct is in clear violation of the letter and spirit of its promises to CDS, as well as the agreements with Xerox. The conduct also frustrates Plaintiff's reasonable expectation that, by entering into the Relinquishment of Rights Agreement, and agreeing to pay Defendants $500,000.00, it could protect its legitimate business interests as excusive agent in the restricted territory. Accordingly, CDS is likely to prevail on the merits of its breach of the implied covenant of good faith and fair dealing claim.

### 4.   Unfair Competition

It is well-settled that courts of this State will not permit businesses and individuals, under the guise of free competition, to engage in malicious and wanton interference, disturbance, and hindrance of another. See Wear-Ever Aluminum, Inc. v. Townecraft Indus., Inc., 75 N.J. Super. 135, 146-47 (Ch. Div. 1962); see also Columbia Broad. Sys. v. Melody Recordings, 134 N.J. Super. 368, 376 (App. Div. 1975) ("[T]he essence of unfair competition is fair play") (citations omitted). The New Jersey Supreme Court has stated that competition is unfair "if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated." Harris v. Perl, 41 N.J. 455, 461 (1964); see also Ryan v. Carmona Bolen Home for Funerals, 341

N.J. Super. 87, 92 (App. Div. 2001) (noting that judiciary should seek to discourage and prohibit the use of misleading or deceptive practices which render competition unfair). The "ultimate inquiry is whether the conduct was 'both injurious and transgressive of generally accepted standards of common morality or of law.' In other words, was the interference by defendant 'sanctioned by the rules of the game.'" Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 757 (1989) (quoting Sustick v. Slatina, 48 N.J. Super. 134, 144 (App. Div. 1957)).

Here, competition by Defendants is clearly unfair. Defendants' conduct violates every "rule of the game," including that a seller should not recapture, by competition, the goodwill of the very business it has sold for value. Defendants negotiated an agreement, pursuant to which it would receive significant financial remuneration, in exchange for the promise to stay away from CDS' customers. Plaintiff has failed to do that, and, using the proprietary information gained as a former agent, along with the customer information and relationships (also gathered while serving as authorized agent in the territory) has endeavored to unfairly compete against Plaintiff.

5.     **Tortious Interference with Contract and Prospective Economic Advantage**

In order to establish tortious interference with both existing contractual relationships and prospective economic advantage, the claimant must establish: 1) "some protectable right -- a prospective economic or contractual relationship;" 2) "intentional" and "malicious" interference with that protectable right; 3) "facts leading to the conclusion that the interference caused the loss of prospective gain;" and 4) damages resulting from the interference." Printing Mart, 116 N.J. at 751-52.

Here, CDS' ongoing business relationships and goodwill establishes a protectable interest that has clearly been and continues to be, interfered with by Defendants. Defendants have maliciously engaged in this conduct, which is evidenced by the lease agreement entered into by Barone Capital and Renaissance Benefit Advisors for the sale of equipment that Renaissance had

18

agreed to lease through CDS.  See V. Compl. at ¶ 33, Ex. D.  CDS has experienced lost sales and

profits as a result of Defendants' competitive activities, as well as significant loss of good will

and reputation.  CDS no longer enjoys the benefit of being an exclusive agent in the restricted

territory as Defendants have become a major competitor, after being paid handsomely not to do

so.  Plaintiff is therefore likely to prevail on its claims for tortious interference with contractual

relationships and prospective economic advantage.

**B.    Defendants' Activities in Violation of the Restrictive Covenant Has Caused and Will
Continue to Cause CDS to Suffer Irreparable Harm.**

A preliminary injunction is appropriate where a plaintiff is "threatened with irreparable

harm if the injunction does not issue."  Coskey's, 253 N.J. Super. at 639.  In general, "harm

which is incapable of being adequately redressed by monetary damages is considered irreparable

in equity."  Comty Hosp. Group, 365 N.J. Super. at 100.  "In other words, plaintiff must have no

adequate remedy at law."  Subcarrier Communications, Inc. v. Day, 299 N.J. Super. 634, 638

(App. Div. 1997).

To establish "irreparable" harm, a plaintiff need only show a likelihood of such harm.

See United Cigar Stores Co. of America v. United Confectioners, 92 N.J. Eq. 449, 450  (1921)

(emphasis added) (stating that "we think the likelihood of irreparable injury was sufficiently

imminent to justify such a mandatory injunction before final hearing"); Sneath v. Lehsten, 120

N.J. Eq. 327, 333 (1936) (emphasis added) ("The acts against which protection is sought must

not only be threatened but such as will, in all likelihood, be committed to the injury of the

complainant, and that injury must be of irreparable character").

Irreparable harm is a logical and consequential result flowing from Defendants' intimate

knowledge of confidential and proprietary information such as Xerox's sales and pricing

structures along with knowledge of its former customers.[3]  Business reputation, goodwill and customer relationships all form established bases for findings of irreparable harm.  See Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998) ("[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill"); see also Wright Med. Tech., Inc. v. Somers, 37 F. Supp. 2d 673, 683 (D.N.J. 1999) (loss to business reputation and customer goodwill constitutes irreparable harm that is not monetizable); Cmty. Hosp. Grp. Inc. v. More, 365 N.J. Super. 84, 100 (App. Div. 2003), aff'd in part, rev'd in part, 183 N.J. 36 (2005) ("[h]arm to . . . reputation for being capable of maintaining a sufficient patient or referral base could have a chilling effect on its ability to recruit," and "[a]ny diminution of its reputation regarding these types of services is not readily capable of being remedied by monetary damages").  Further, the fact that such circumstances constitute irreparable harm is not only recognized by New Jersey law, but, as mentioned above, was expressly acknowledged by all parties prior to entering into the agreement.

## C.    A Balance of the Equities Favor Granting the Preliminary Injunction.

"The final test in considering the granting of a preliminary injunction is the relative hardship to the parties in granting or denying relief."  Crowe, 90 N.J. at 134.  Where "the granting of the preliminary injunction will not inflict undue hardship on defendant but denying it will substantially hurt the plaintiff," an injunction should issue.  News Printing Co. v. Borough of Totowa, 211 N.J. Super. 121, 129 (Law Div. 1986).

---

[3] Here, the parties were well aware that a breach of the Restrictive Covenant would result in irreparable harm to CDS.  Section 7(b) of the Agreement, expressly so states:

> The Barone Entities, Peter and Janice agree that the remedy at law for any breach of the requirements of this Section 7 will be inadequate and that any breach or attempted breach would cause immediate and permanent damage to CDS.

See V. Compl. at ¶ 22, Ex. C, § 7(b).

If Defendants are allowed to continue poaching CDS' customers, and directly marketing and selling Xerox equipment in the restricted territory, the consequences for CDS would be disastrous. Indeed, CDS' business accounts and ongoing relationships are essential to its ability to successfully perform its contract with Xerox and reach its performance goals. Use of contacts that Defendants developed as a previous agent to these same customers, affords them a distinct advantage in obtaining sales that CDS would otherwise be able to receive, and to earn profits that legitimately belong to CDS. Absent judicial intervention, there is nothing to protect CDS' legitimate business interests from Defendants' ongoing course of conduct, which has been severely and irreparably harmful.

By contrast, the only harm to be suffered by Defendants if the injunctive relief sought by CDS is granted, would be to require adherence to a negotiated arms-length agreement, which itself is fair and reasonable. The relief sought by CDS does not banish Defendants from the business and was narrowly tailored and specifically limited to activities in the "print related" business, allowing Defendants to continue performing service, information technology and office automation. Defendants are also allowed to conduct any type of business outside of the restricted area and can resume service within the area after five (5) years. The fact that Defendants can continue in the business and continue to service its customers in at least some capacity is hardly a sufficient hardship to justify denial of the relief sought. See J.H. Renarde, 312 N.J. Super. at 206 ("Certainly, plaintiff's hardship of potentially having no protection against the loss of his customer relationships greatly outweighs defendants' additional commuting time.").

## POINT II

**EXPEDITED DISCOVERY IS APPROPRIATE IN THIS MATTER TO PERMIT CDS TO ASCERTAIN THE SCOPE AND EXTENT OF**

## DEFENDANTS' COMPETITIVE ACTIVITIES AND RESULTING DAMAGES.

The Rules Governing the Courts of New Jersey expressly authorize a court to allow parties to conduct expedited discovery where warranted by the circumstances.  For example, R. 4:14-1 provides that, upon leave of court, a plaintiff is permitted "to take a deposition prior to the expiration of 35 days after service of the summons and complaint upon defendant[.]" R. 4:14-1. Once noticed, a court "may for cause shown enlarge or shorten the time for taking the deposition" from 10 days. R. 4:14-2(b) (emphasis added).  Similarly, the rules provide courts with the authority to decrease the time within which parties must respond to interrogatories and requests for production of documents.  See R. 4:17-4(b) (emphasis added) (noting that "[f]or good cause shown the court may enlarge or shorten" the 60 days in which a party has to respond to interrogatories); R. 4:18-1(b) (emphasis added) (a court "may allow a shorter or longer time" for parties to respond to requests for production of documents).

Cases allowing discovery on an expedited basis are legion.  See, e.g., Charles Gendler & Co., Inc. v. Telecom Equipment Corp., 102 N.J. 460, 483 (1986) (noting that discovery on jurisdictional issues, if necessary, should proceed expeditiously); Macopoulos v. Walt Disney World, Inc., 221 N.J. Super. 513, 519 (App. Div. 1987) (directing the trial court to conduct expedited discovery on jurisdictional issues); Pogostino v. Leighton, 216 N.J. Super. 363, 366 (App. Div. 1987) (noting that the parties engaged in expedited discovery upon plaintiff's application for injunctive relief); Lyons v. Premo Pharmaceutical Labs, Inc., 170 N.J. Super. 183, 189 (App. Div. 1979) (permitting expedited discovery to allow plaintiffs to take depositions to determine whether plaintiffs had identified all of the proper defendants); Simon v. Oldsmans Tp., 203 N.J. Super. 365, 377 (Ch. Div. 1985) (ordering the parties to engage in discovery on an expedited basis since issues in case were limited); Boardwalk Regency Corp. v. Attorney

22

General of State of N.J., 188 N.J. Super. 372, 373 (Law Div. 1982) (noting that discovery on declaratory judgment action was conducted on an expedited basis).

Moreover, in a Chancery action, where extraordinary relief such as the issuance of a preliminary injunction may be granted on the return date, expedited discovery is not only allowed, but is essential to the application. In Pogostino, the plaintiff, a holder of first preferred stock, sought a preliminary injunction precluding the corporation from merging with another company. As a shareholders' meeting upon which the merger issue would be decided was imminent, the court permitted expedited discovery. On appeal, the Appellate Division implicitly recognized the advantage of expedited discovery under such circumstances. Id. at 366.

Here, expedited discovery clearly is warranted. Even after signing an agreement with clear restrictions against competition, and receiving more than $150,000, Defendants have been directly engaging in impermissible activities. Limited investigation has uncovered several breaches. CDS should therefore be entitled to expedited discovery so that it may uncover the scope and extent of Defendants' wrongful and violative activities. Specifically, CDS seeks to propound document requests upon Defendants, as well as take the deposition of Peter Barone, concerning the scope and extent of the ongoing competitive activities by Defendants, their agents, servants, employees, corporations, successors in interest and all others acting in concert and participation with them within the Territory, and the extent of harm caused by Defendants' violations.

## CONCLUSION

For the reasons set forth above, CDS respectfully requests that this Court enter a preliminary injunction enjoining Defendants from continuing to violate the terms of the restrictive covenant provision contained in the Relinquishment of Rights Agreement.

**GIBBONS P.C.**
*Attorneys for Plaintiff*
*Complete Document Solutions PA, LLC*

By: _____
        Fruqan Mouzon
        Elyssa Kay

Dated: January 17, 2013
         Newark, New Jersey