**MASSOOD & BRONSNICK, LLC**
50 Packanack Lake Road East
Wayne, New Jersey 07470-6663
(973) 696-1900
Attorneys for: Plaintiff

**THE AGRESTA FIRM PC**
24 Grand Ave
Englewood, NJ 07631
(201) 399-6891
Attorneys for: Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVALE SURGICAL CENTER, LLC A/S/O various "PATIENTS", <br><br> Plaintiffs(s), <br><br> v. <br><br> CONNECTICUT GENERAL LIFE INSURANCE COMPANY D/B/A CIGNA, CIGNA HEALTHCARE OF NEW JERSEY, INC.; ABC CORP. (1-10) (Said names being fictitious and unknown entities), <br><br> Defendant(s), | CIVIL ACTION NO.: 2:12-cv-05257-SRC-CLW <br><br> **SECOND** ~~FIRST~~ **AMENDED COMPLAINT** |

The Plaintiffs, Montvale Surgical Center, LLC A/S/O various "Patients" identified by first ~~name~~ and last name initial below, (hereinafter referred to as "Plaintiff") by way of ~~First~~ Second Amended Complaint against Defendants say:

Massood & Bronsnick, LLC
Attorneys at Law

**JURISDICTION AND VENUE**

1. This action is brought pursuant to a federal question under ERISA, codified at 29 U.S.C. § 1001, et seq.

2. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. This Court is a proper venue for this action under 28 U.S.C. §1391 because the parties conduct business within this judicial district and did so with respect to the matters that gave rise to this lawsuit.

**THE PARTIES**

4. Plaintiff, Montvale Surgical Center, LLC (hereinafter referred to as "MSC") is an outpatient Ambulatory Surgery Center (hereinafter referred to as "ASC") where surgical procedures are performed, having its office located at 6 Chestnut Ridge Road, Montvale, NJ 07645. At all relevant times, the Plaintiff was an "out-of-network" medical practice that provided various surgical services to subscribers enrolled in the healthcare plans of Defendants.

5. Defendant Connecticut General Life Insurance Company d/b/a Cigna (hereinafter "CIGNA") is a national health carrier doing business in the State of New Jersey and the County of Bergen, with its principal place of business at 900 Cottage Grove Road, Bloomfield, Connecticut 06002 and offers, underwrites, and administers both ERISA and non-ERISA commercial health plans ("Plan" or "Plans") through CIGNA.

Massood & Bronsnick, LLC
Attorneys at Law

~~3.~~ 6. Cigna Healthcare of New Jersey, Inc. (hereinafter referred to as "CIGNA HEALTH") is a health carrier with its principle place of business at 499 Washington Boulevard, Jersey City, New Jersey.

~~4.~~ 7. CIGNA and CIGNA HEALTH (hereinafter collectively referred to as "Defendants") are authorized to transact insurance business throughout the State of New Jersey, which actively solicits customers from New Jersey.

8. ABC Corps 1-10 have been added as Defendants in this matter because their identity is not known at this time, and Plaintiff is including them in this action through fictitious names.

### SUBSTANTIVE ALLEGATIONS

9. Plaintiff, a non-participating or "out-of-network" medical provider, is a New Jersey Medicare certified surgery licensure exempt single operating room surgical center that provides surgical facility services associated with outpatient surgery at its facility. Plaintiff's facility is exempt from licensure in accordance with applicable New Jersey Department of Health and Senior Services regulations.

~~5.~~ 10. Plaintiff provided surgical facility "out-of-network" services to certain patients who were insureds of or otherwise entitled to medical and healthcare expense benefits under Defendants' ERISA and non-ERISA policies or Plans.

~~6.~~ 11. MSC received written Assignment of Benefits agreements from various Patients, who were CIGNA/CIGNA HEALTH participants, thereby providing Plaintiff the contractual right and standing to pursue the within claims under each Patient's policy of health insurance issued by CIGNA/CIGNA HEALTH.

~~7.~~ 12. The terms of Defendants' insurance agreements or plans were controlled by the

laws of the State of New Jersey and/or Regulations of the New Jersey Department of Banking and Insurance and by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1101, et seq.

13.     Defendants denied payment for services rendered to CIGNA enrollees on the basis that CIGNA/CIGNA HEALTH will not pay for services claiming that the "services [were] rendered by unlicensed providers or entities." However, at all times relevant herein, CIGNA/CIGNA HEALTH paid for services to single operating-room facilities that were in-network with CIGNA/CIGNA HEALTH regardless of their licensure status.

14.     Specifically, at all relevant times, Defendants provided ERISA or non-ERISA coverage for medical and healthcare benefits to their subscribers, members, participants and/or dependents, collectively referred to herein as "Patients" (the patients are identified by first and last initial in order to protect confidential health information). The coverage for medical and healthcare expense benefits enable Patients to seek treatment and care from "out-of-network" providers such as the Plaintiff.

15.     Prior to rendering the subject services to Patients, and where required, Plaintiff called Defendants' representatives to confirm (by way of pre-authorization or precertification) that the patients had "out-of-network" benefits for facility outpatient services at Plaintiffs surgical center for spine procedures and/or injections for pain management under their respective insurance agreements or Plans with Defendants, and in each case Defendants' representatives confirmed and represented there was such coverage as to each patient. Defendants also confirmed and represented that they did not require that Plaintiff obtain pre-authorization pre-certification to render the subject

services, or Defendants provided the necessary pre-authorization/pre-certification. In all cases, the Plaintiff relied on the representations of Defendants to Plaintiffs detriment in rendering the subject services.

16. In each instance with regard to the subject services rendered by the Plaintiff to Patients, the Defendant subsequently denied benefits and payments for the services rendered on grounds that were: (a) arbitrary and capricious (as to the ERISA Plans); (b) violative of state contract law (as to the non-ERISA Plans); and/or (c) violative of state promissory estoppel and misrepresentation common law (as to all Plans). Plaintiff's causes of action arising under promissory estoppel and misrepresentation are applicable to all denials, regardless of whether those denials arose from ERISA or non-ERISA Plans, and such causes of action are independent of and unrelated to ERISA, and do not require the review or consideration of any purported Plan terms or documents.

17. Specifically, in each instance the Defendants' subsequent denials, despite their representations to the contrary, and after Plaintiff rendered the services in reliance on these representations – were based solely on their erroneous and/or negligent assertion that the "services rendered by unlicensed providers or entities are not covered under benefit plans administered by and or underwritten by" the Defendants, or on grounds substantially identical. Defendants issued these denials in all instances for out-of-network single room facilities, like Plaintiff, while granting payment to similar in-network single room facilities despite the fact that both types of facilities were governed by the same Plan.

18. Such denials, however, are in direct contradiction of the laws of the state of New Jersey, Department of Health, codified at 8 *N.J.A.C.* §43A, et seq., under which a

licensure exempt surgical center, entirely physician owned, with a single operating room such as the Plaintiff's, is not required to be licensed. ASCs with only one operating room presently escape this licensure requirement (and its corresponding regulatory demands) because they are defined as "physician's surgical practices," which are excluded from the definition of surgical facilities that must be licensed in accordance with *N.J.S.A*. 26:2H-12(g)(5); N.J.A.C. 8:43A-1.3.

Thus, Plaintiff's practice is not defined as a single room surgery facility.

19.     Furthermore, such denials are in direct contradiction to the representations made by Defendants to Plaintiff that the services rendered by Plaintiff would be covered under Defendants' Plans. Defendants' Plans do not specifically exclude payments to single room and/or unlicensed surgery facilities. In fact, the Plans specifically address the "Prior Authorization/Pre-Authorized" by indicating that "outpatient facility services" require prior authorization, which was completed for the Patients relevant herein.

20.     Plaintiff has standing to bring this action because it exhausted all appeals or the filing of appeals or further appeals would be futile.  By way of example, on August 20, 2011, with regard to the December 2, 2010 services rendered to Patient, K.R., CIGNA/CIGNA HEALTH denied Plaintiff's first and second level appeals and upheld the original decision to deny reimbursement because Plaintiff was a "non-licensed provider (and that CIGNA/CIGNA HEALTH) and its subsidiaries provide benefits only for licensed providers practicing within the scope of their license."

21.     Plaintiff also has standing to bring this action because the Patients provided complete assignment of benefits to the Plaintiff.  In relevant part, the assignment of

benefits provides that:

> "I (Patient) irrevocably assign to Montvale Surgical Center, LLC (MSC) all of my rights and benefits under insurance contracts for payment for services rendered to me by MSC…. I irrevocably authorize MSC to obtain counsel and enter legal or other actions on my behalf and or in my name, including the arbitration/dispute resolution process, and to collect such sums due it, should sums not to be paid within the legally prescribed timeframe. In the event that MSC elects to bring a lawsuit or petition for arbitration/dispute resolution against the insurance carrier, I am irrevocably assign my rights, title and interest under the medical expense benefits and/or PIP section of any insurance policy which I am entitled to proceed for benefits. This assignment shall allow an attorney of MSC's choosing to bring suit or submit arbitration/dispute resolution their claim for any unpaid bills for services rendered for injuries that I sustained in this or any accident…"

22. To the extent that Defendants may contend that an anti-assignment clause(s) prohibits an assignment of benefits, Defendants have waived their rights to assert such clause(s) due to their, or their agents', regular course of dealings with the Plaintiff during which these Defendants, or their agents, continuously dealt directly with the Plaintiff regarding, inter alia, medical necessity and pre-certification issues, claim submissions, claim adjudication, claim follow-up and/or appeal issues, without ever invoking any purported anti-assignment provision.

23. Plaintiff also has standing to assert its state law promissory estoppel and negligent misrepresentation claims, arising from the erroneous and/or negligent misrepresentations of coverage made by Defendants, because these claims: (a) arise independent of and do not implicate ERISA in any respect; (b) may be asserted directly by Plaintiff without the need for an assignment of benefits from Patients; and (c) are not preempted by ERISA. Plaintiff also has standing for the Plans that are not governed by ERISA, under a breach of contract allegation.

24. The denial of said medical and healthcare expense benefits constitutes a breach

Massood & Bronsnick, LLC
Attorneys at Law

of the Plans between the Defendants and the Plaintiff, as assignee. The Plaintiff therefore seeks reimbursement and compensation for any and all benefits it should have received as a result of the Defendants' failure to provide coverage.

~~8.~~ 25. As a direct and proximate result of the aforementioned conduct of the Defendants, the Plaintiff has been damaged in an amount equal to the amount of benefits to which the Plaintiff should have been entitled to under the terms of the subjects Plans. In addition, the Plaintiff is entitled to pre-judgment interest at the appropriate rate.

**FIRST COUNT**
**(Violation of ERISA)**

~~9.~~ 26. MSC repeats and re-alleges all prior allegations as though fully set forth herein.

27. This Count arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 et seq.

~~10.~~ 28. The Defendants' actions and inactions as set forth herein constitute an arbitrary and capricious breach of the terms of the subject ERISA insurance Plans entered into between the Defendants and Patients wherein the Defendants agree to provide Patients with medical and healthcare expense benefits for the medical services provided by the Plaintiff.

~~11.~~ 29. Specifically, in this case, the MSC provided the facilities and treating doctors for the medical procedures, to various patients and participants in CIGNA/CIGNA HEALTH insurance plans.

30. MSC owns a lawfully approved "physician's surgical practice," which is excluded from the definition of surgical facilities that must be licensed in accordance with *N.J.S.A.* 26:2H-12(g)(5); N.J.A.C. 8:43A-1.3.~~single operating room ASC,~~

Massood & Bronsnick, LLC
Attorneys at Law

Massood & Bronsnick, LLC
Attorneys at Law

~~providing surgical services to patients insured by Defendants under health insurance policies provided to those patients by their employers as an employee benefit (hereinafter "Cigna ERISA participants"); as well as to other patients insured by Cigna (hereinafter "individual Cigna insureds")(collectively referred to as "Patients").~~

~~12.~~ 31.   Enrollees of plans administered by the Defendants are entitled to utilize the Plaintiff's surgical services under health insurance policies provided to those patients by their employers as an employee benefit (hereinafter "Cigna ERISA participants"); as well as to other patients insured by Cigna (hereinafter "individual Cigna insureds")(collectively referred to as "Patients").

~~13.~~ 32.   At all times relevant herein, MSC has been authorized by the State of New Jersey to operate as an ASC pursuant to N.J.S.A. § 45:9-22.5a. As such, at all times relevant herein, MSC was not required to maintain a license with the State of New Jersey as an ASC.

~~14.~~ 33.   In addition, MSC received its approval as a participant as an ASC supplier of services from the Centers for Medicare & Medicaid Services on or about October 8, 2008. MSC received it~~s~~ accreditation from the Accreditation Association for Ambulatory Health Care, Inc. (AAAHC) on or about January 16, 2009.

~~15.~~ 34.   The patients who received medical services at MSC were Cigna ERISA participants and individual Cigna insureds, who have assigned their rights to reimbursement and payment of the charges for the surgical facility services to Plaintiff. The individuals patients include, but are not limited to:

| **Patients** |
| --- |
| ~~Maria~~ M.A. |
| ~~William~~ W. A. |
| ~~Domenick~~ D. A. |

**Formatted Table**

| |
|---|
| ~~Marc~~ M.B. |
| ~~Allen~~ A.B. |
| ~~Paul~~ P. C. |
| ~~Janice~~ J.C. |
| ~~Tracy~~ T.C. |
| ~~Jerry~~ J.D. |
| ~~Deanna~~ D. D. |
| ~~Anthony~~ A.D. |
| ~~Maritza~~ M.E. |
| ~~Nadine~~ N. F. |
| ~~Nathan~~ N.F. |
| ~~Ronald~~ R.G. |
| ~~Mattie~~ M. G. |
| ~~Thomas~~ T. G. |
| ~~Robin~~ R.H. |
| ~~Mamie~~ M.I. |
| ~~Thomas~~ T. J. |
| ~~James~~ J.J. |
| ~~Jessica~~ J.K. |
| ~~Brian~~ B.L. |
| ~~Michael~~ M.M. |
| ~~Cindy~~ C.M. |
| ~~Aneel~~ A.M. |
| ~~Herbert~~ H. M. |
| ~~Kimberly~~ K. M. |
| ~~Janet~~ J.M. |
| ~~Anthony~~ A. M. |
| ~~Melissa~~ M. O. |
| ~~Glenn~~ G. O. |
| ~~Corina~~ C. P. |
| ~~Robert~~ R. P. |
| ~~Sandhya~~ S.P. |
| ~~Keith~~ K.R. |
| ~~Nicole~~ N.R. |
| ~~Virginia~~ V.R. |
| ~~Patricia~~ P.S. |
| ~~Gail~~ G.S. |
| ~~Adam~~ A.W. |
| M. S. |

(hereinafter referred to collectively as "Patients").

~~16.~~ 35.    Defendants' Plans with the Patients contain provisions that permit payment on behalf of these patients for outpatient facility services at the surgical facilities.

~~17.~~ 36.    Defendants denied payment for services rendered on the basis that CIGNA/CIGNA HEALTH will not pay for services claiming that the "services [were] rendered by unlicensed providers or entities." However, at all times relevant herein, CIGNA/CIGNA HEALTH paid for services to single operating-room facilities that were in-network with CIGNA/CIGNA HEALTH regardless of their licensure status.

~~18.~~ 37.    The total unpaid charges representing surgical facility services on account of services provided to the Patients, which have been assigned to Plaintiff and for which payment has been refused currently exceeds $1,5~~3~~00,000.00.

~~19.~~ 38.    Despite its confirmation of reasonable and customary payment for medically necessary services, prior to MSC rendering of the services, Defendants refused to pay the subject claims appropriately in accordance with said confirmation.  Because of Defendants' misrepresentations, MSC was never paid its reasonable and customary rates.

~~20.~~ 39.    Defendants represented to MSC and the Patients that, medical services would be paid to outpatient ASCs. However, Defendants misrepresented this fact to the Patients since the Defendants knew they would not pay out-of-network ASCs operating single room (unlicensed) facilities, yet would have paid in-network ASC's operating single room (unlicensed) facilities.

40.    The Defendants' disparate payment policy regarding out-of-network ASCs, like MSC and in-network ASCs constitutes a decision and policy that is arbitrary and capricious. Recognizing that CIGNA/CIGNA HEALTH and other insurance companies

**Formatted:** Indent: Left:  0", Hanging:  0.5", No bullets or numbering

unfairly discriminated with respect to plan members' benefits with respect to out-of-network providers even where they paid extra for such benefits new § 2706(a) of Public Health Service Act {also known as the "Harkin Amendment" after Iowa Senator Tom Harkin, who introduced it) created by § 1201 of Patient Protection and Affordable Care Act ("PPACA") prohibits discrimination against a provider on the basis of participation or coverage. In other words, discrimination against non-participating as a class — discrimination based upon participation. Commentators have said the PPACA may borrow disparate impact theory.

Accordingly, § 2706(a) of the PPACA provides that:

> "SEC. 2706. NON-DISCRIMINATION IN HEALTH CARE.
> "(a) PROVIDERS.—A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law. This section shall not require that a group health plan or health insurance issuer contract with any health care provider willing to abide by the terms and conditions for participation established by the plan or issuer. Nothing in this section shall be construed as preventing a group health plan, a health insurance issuer, or the Secretary from establishing varying reimbursement rates based on quality or performance measures.

In addition, § 2706(a) of the PPACA is,

    A.    the first federal provider non-discrimination law applicable to non-government Programs;

    B.    the first provider non-discrimination law applicable to self-insured ERISA plans;

    C.    applies across categories of providers; and

    D.    bars discrimination with respect to participation under the

plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law.

Further, § 2706(a) of the PPACA,

A. Bans discrimination regarding "participation" related to provider network participation;

B. Bans discrimination with respect to participation with respect to plan decisions including discrimination in the contractual terms of participation; and

C. Provides that ban regarding "coverage" reaches terms of health plan coverage and plan design, such as services covered, benefit limits, and enrollee cost-sharing.

41. MSC has demanded payment from Defendants and submitted appeals requesting the reasonable and customary rate for the medical services rendered under the terms of the individual Patients' health insurance policies.

42. The Patients' plans, under which Patients are entitled to health insurance coverage under ERISA, are administered and operated by CIGNA/CIGNA HEALTH and/or CIGNA/CIGNA HEALTH's designated third-party administrator and/or agent under ERISA.

43. CIGNA/CIGNA HEALTH is the administrator and fiduciary in relation to the matters set forth herein because, *inter alia*, they exercise discretionary authority and/or discretionary control with respect to management of the plans under which Patients are entitled to benefits as assigned to Plaintiff.

44. CIGNA/CIGNA HEALTH is a fiduciary in relation to the matters set forth herein, by virtue of its exercise of authority and/or control and/or function control respecting the management and disposition of assets of the plans and/or by exercising discretionary authority and/or discretionary responsibility and/or functional authority in

the administration of the Patients' plans. CIGNA/CIGNA HEALTH received authority as a Plan service provider as delegated by the Plan's themselves. As such, CIGN/CIGNA HEALTH is solely responsible for the proper enforcement and interpretation of the Plans.

26. 45. CIGNA/CIGNA HEALTH's fiduciary functions include, *inter alia*, preparation and submission of explanation of benefits, determinations as to claims for benefits and coverage decisions, oral and written communications with Plaintiff concerning benefits to Patients under the plans, and coverage, handling, management, review, decision-making and disposition of appeals and grievances under the Patients' plans.

27. 46. MSC received assignment of benefits from the Patients which had "out-of-network" benefits for surgery under their plans or insurance agreements with or administered by CIGNA/CIGNA HEALTH through which the Patients assigned to MSC, *inter alia*, the individual Patients' right to receive payment directly from CIGNA/CIGNA HEALTH for the services that the Patients received from MSC.

28. 47. Each Assignment of Benefits that MSC received from each Patient confers upon MSC the status of "beneficiary" under § 502 (a) of ERISA, 29 USC § 1132(a)(1)(B) and § 1102(8) et seq.

29. 48. As a beneficiary under § 502 (a) of ERISA, 29 USC § 1132(a)(1)(B), MSC is entitled to recover benefits due (and/or other benefits due to the Patients), and to enforce the rights of the Patients (and/or the rights of the Patients) under ERISA law and/or the terms of the applicable plans/policies.

30. 49. MSC has sought payment of benefits under the applicable Patients' plans and CIGNA/CIGNA HEALTH has refused to make payment to MSC for all the medical

services rendered to the Patients despite the fact that MSC was a duly authorized ASC in the State of New Jersey and CIGNA/CIGNA HEALTH paid other unlicensed "in-network" single room facilities for medical services during the relevant time period.

~~31.~~ 50. The denial of Patients' claims are unsupported by substantial evidence, erroneous as a matter of law, not made in good faith, is arbitrary and capricious and is in violation of ERISA.

~~32.~~ 51. The form and basis of the denial of the Patients' claims are insufficient and not in compliance with ERISA.

~~33.~~ 52. MSC is entitled to recover the reasonable attorneys' fees and costs of action pursuant to 29 USC § 1132(g), et seq. and other provisions of ERISA, as applicable.

~~34.~~ 53. There is no basis for the claims not being paid when the reasonable and customary charge is the standard.

WHEREFORE, MSC requests judgment against Defendants for:

a) Compensatory damages;
b) Interest;
c) Costs of suit;
d) Attorney's fees; and
e) Such other relief as the Court deems equitable and just.

**SECOND COUNT**
**(ERISA 29 U.S.C. § 1132 (g)(1)—as to ERISA Plans)**

54. ~~MSC~~ Plaintiff repeats and re-alleges each and every allegation set forth above as if set forth in full herein. ~~all prior allegations as though fully set forth herein.~~

55. 29 U.S.C. § 1132 (g)(1) authorizes an award of reasonable attorneys' fees and costs of an ERISA action.

56. As a result of the actions and failings of the Defendants, the Plaintiff had to

retain the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action. Further, the Plaintiff anticipates incurring additional attorneys' fees and costs in pursuing this action to conclusion in an amount that will be calculated at the conclusion of this action.

~~35.~~ 57. The Plaintiff therefore requests an award of reasonable attorneys' fees and costs.

~~36.   On or about the aforementioned dates and place, Defendants, ABC Corporations 1 through 10, were parties responsible for the payments of MSC's reasonable and customary fees and failed to make appropriate payments to MSC.~~

WHEREFORE, ~~MSC requests~~the Plaintiff demands judgment against Defendants for: ~~;~~

~~a)~~   a) Damages and compensation payable under the Subject ERISA benefit Plans to reimburse the Plaintiff for medical and healthcare expense benefits and payments that the Plaintiff is entitled to receive as assignee of such benefits from Patients;~~Compensatory damages;~~
~~b)~~   b) Interest;
~~c)~~   c) Costs of suit;
~~d)~~   d) Attorney's fees; and
       e) Such other relief as the Court deems equitable and just.

**THIRD COUNT**
**(Promissory Estoppel—as to All Plans)**

58. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

59. Prior to rendering the subject services to Patient, and where required, Plaintiff called Defendants' representatives to confirm (by way of pre-authorization or pre-certification) that the patient had "out-of-network" benefits for facility outpatient services at Plaintiffs surgical center for various services under their respective insurance agreements or Plans with Defendants, and in each case Defendants' representatives confirmed and represented there was such coverage as to each patient and/or advised

Plaintiff that no pre-authorization was necessary to render such services.

60.     Plaintiff then relied on the representations of Defendants to Plaintiffs detriment in rendering the subject services.

61.     At no time did the Defendants ever withdraw their pre-authorization or pre-certification, or otherwise advise Plaintiff that they were not authorized to render the subject services, or that coverage was unavailable notwithstanding Defendants' prior representations to the contrary.

62.     Despite the Defendants' continued authorization or similar approval of treatment, the Defendants have not paid Plaintiff for the subject services.

63.     The Defendants' actions have therefore caused Plaintiff to suffer a detriment of definite and substantial nature in reliance upon the Defendants' pre-authorization, pre-certification or similar approval, thus constituting an actionable claim pursuant to the doctrine of promissory estoppel

64.     The promissory estoppel claim does not arise under ERISA, and is an independent state law claim that is not preempted by ERISA.  Resolutions of promissory estoppel claim does not require a review or consideration of the Plan documents, as this cause of action arises solely based on the representations made to Plaintiff by Defendants that are independent of whatever the Plan coverage may provide.

65.     Plaintiff has suffered significant damages as a result.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

(a) Compensatory damages;
(b) Interest;
(c) Costs of Suit;
(d) Attorneys' fees; and
(e) Such other relief as the Court deems equitable and just.

**FOURTH COUNT**
**(Negligent Misrepresentation – as to All Plans)**

66. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

67. Despite their pre-authorization and/or pre-certification and/or representations that Patients had coverage for the services to be rendered by Plaintiff, the Defendants negligently refused to pay the subject services.

68. The Defendants' negligent false representations of pre-authorization, pre-certification, coverage, or other approvals to the Plaintiff, and the resulting refusal to pay Plaintiff for the services rendered, was unknown to Plaintiff at the time it agreed to perform the subject services. Plaintiff reasonably expected and relied upon what it believed to be the Defendants' honest representations when Defendants pre-authorized, pre-certified or otherwise advised the Plaintiff it had approval to render the subject services and/or that coverage was afforded for such services.

69. Plaintiffs reliance on these representations was to its substantial detriment.

70. The negligent misrepresentation claim does not arise under ERISA, and is an independent state law claim that is not preempted by ERISA. Resolution of the negligent misrepresentation claim does not require a review or consideration of the Plan documents, as this cause of action arise solely based on the representations made to

Plaintiff by Defendants that are independent of whatever the Plan coverage may provide.

71.     Plaintiff has suffered significant damages as a result.

WHEREFORE, Plaintiff demands judgment against the Defendant for:
(a)  Compensatory damages;
(b)  Interest;
(c)  Cost of Suit;
(d)  Attorneys' fees; and
(e)  Such other relief as the Court deems equitable and just.

## FIFTH COUNT
### (Breach of Contract – as Non- ERISA Plans)

72.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

73.     The Defendants' actions as set forth herein constitute a breach of the terms of the subject non-ERISA insurance Plans entered into between the Defendants and Patients wherein the Defendants agreed to provide Patients with medical and healthcare expense benefits for the medical services provided by the Plaintiff.

74.     The Plaintiff is entitled to recover said medical and healthcare expense benefits pursuant to state common law breach of contract, as an assignee of the complete benefits from Patients, pursuant to the benefit Plans at issue.

75.     The denial of said medical and healthcare expense benefits constitutes a breach of the Plans between the Defendants and the Plaintiff, as assignee.  The Plaintiff therefore seeks reimbursement and compensation for any and all benefits it should have received as a result of the Defendants' failure to provide coverage.

76.     As a direct and proximate result of the aforementioned conduct of the Defendants, the Plaintiff has been damaged in an amount equal to the amount of

Massood & Bronsnick, LLC
Attorneys at Law

benefits to which the Plaintiff should have been entitled to under the terms of the subject Plans. In addition, the Plaintiff is entitled to pre-judgment interest at the appropriate rate.

WHEREFORE, Plaintiff demands judgment against the Defendants for:

(a) Compensatory damages;
(b) Interest;
(c) Cost of Suit;
(d) Attorneys' fees; and
(e) Such other relief as the Court deems equitable and just.

### DESIGNATION OF TRIAL COUNSEL

The undersigned hereby designates Andrew R. Bronsnick, Esq. as trial counsel for the within matter.

### JURY DEMAND

The undersigned hereby demands a trial by jury as to all issues.

MASSOOD & BRONSNICK, LLC
Attorneys for Plaintiff

_____
ANDREW R. BRONSNICK, ESQ.

Dated:  June 17, 2014June 2, 2014
w:\wp51\majormed\montvale surgical center\cigna non-payment cases\second amended complaint- redlined 60214.docxw:\wp51\majormed\montvale surgical center\cigna non-payment cases\first amended complaint 3.6.13.docx