## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVALE SURGICAL CENTER, LLC a/s/o various "PATIENTS", <br><br> Plaintiff, <br><br> vs. <br><br> CONNECTICUT GENERAL LIFE INSURANCE COMPANY D/B/A CIGNA, CIGNA HEALTHCARE OF NEW JERSEY, INC.; ABC CORP. (1-10) (said names being fictitious and unknown entities), <br><br> Defendants. | Civil Action No.: 12-05257 (SRC) (CLW) <br><br> *Document Electronically Filed* |

**DEFENDANT CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF MONTVALE SURGICAL CENTER, LLC'S MOTION FOR LEAVE TO FILE A MOTION OUT-OF-TIME FOR LEAVE TO FILE A 'SECOND AMENDED COMPLAINT'**

E. Evans Wohlforth, Jr., Esq.
Elizabeth A. Irwin, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4879
(973) 639-6486
*Attorneys for Defendant*
*Connecticut General Life Insurance Company*

## **TABLE OF CONTENTS**

                                              **Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 2

LEGAL ARGUMENT .................................................................................................................. 5

I.     PLAINTIFF FAILS TO SATISFY THE HEIGHTENED "GOOD CAUSE" STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 16. ......................... 5

        A.     Plaintiff Argues Its Motion Under the Wrong Standard ........................................ 5

        B.     Plaintiff Cannot Establish Good Cause Because Plaintiff Was Aware of All the Facts and Legal Theories Long Before This Motion Was Filed. ............... 8

        C.     Production of the Summary Plan Descriptions was Timely and, In Any Event, Has Nothing to Do With the New Claims Asserted. ................................ 11

        D.     The Proposed Pleading is Futile ........................................................................... 12

CONCLUSION ........................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**CASES**

Assadourian v. Harb,
 No. 06-896, 2008 U.S. Dist. LEXIS 66182 (D.N.J. Aug. 28, 2008) ......................................... 9

Dimensional Commc'ns, Inc. v. Oz Optics, LTD.,
 148 Fed. Appx. 82 (3d Cir. 2005) ................................................................................... 6, 7, 9

Eastern Minerals & Chems. Co. v. Mahan,
 225 F.3d 330 (3d Cir. 2000) ...................................................................................................... 6

Globespanvirata, Inc. v. Tex. Instruments, Inc.,
 No. 03-2854, 2005 U.S. Dist. LEXIS 16348 (D.N.J. July 11, 2005) .................................... 6, 8

Harrison Beverage Co. v. Dribeck Importers, Inc.,
 133 F.R.D. 463 (D.N.J. 1990) ................................................................................................... 9

Hutchins v. UPS,
 No. 01-1462, 2005 U.S. Dist. LEXIS 15625 (D.N.J. July 26, 2005) ....................................... 8

Joy v. Perez,
 No. 10-01636, 2011 U.S. Dist. LEXIS 5875 (D.N.J. Jan. 21, 2011) .............................. 7, 9, 10

Koplove v. Ford Motor Co.,
 795 F.2d. 15 (3d Cir. 1986) ....................................................................................................... 6

Neelendu Bose v. Horizon Blue Cross Blue Shield of N.J.,
 2014 U.S. Dist LEXIS 43244 (March 31, 2014) .................................................................... 14

Pain & Surgery Ambulatory Ctr., P.C. v. Conn. Gen. Life Ins. Co.,
 532 F. App'x 209 U.S. App. LEXIS 18768 (3d Cir. Sept. 10, 2013) ................................... 2, 3

Prime Ins. Syndicate v. United Risk Mgmt. Servs., Inc.,
 No. 03-1050, 2006 U.S. Dist. LEXIS 50670 (D.N.J. July 25, 2006) ....................................... 9

Roggio v. FBI,
 No. 08-4991, 2011 U.S. Dist. LEXIS 91710 (D.N.J. Aug. 17, 2011) .................................. 7, 8

Stallings v. IBM Corp.,
 08-3121, 2009 U.S. Dist. LEXIS 81963 (D.N.J. Sept. 8, 2009) ............................................... 9

Thoman v. Philips Medical Systems,
 No. 04-3698, 2007 U.S. Dist. LEXIS 4990 (D.N.J. Jan. 24, 2007) ........................................ 13

Trustees of the Local 464A UFCW Pension Fund v. Wachovia Bank, N.A.,
 2011 U.S. Dist. LEXIS 15176 (D.N.J. Feb. 15, 2011) ......................................................... 8, 9

Turner v. Schering-Plough Corp.,
 901 F.2d. 335 (3d Cir. 1989) ..................................................................................................... 6

United States v. Princeton Gamma-Tech,
 817 F. Supp. 488 (D.N.J. 1993) ................................................................................................ 6

Velto v. Reliance Std. Life Ins. Co.,
  No. 10-1829, 2011 U.S. Dist. LEXIS 20933 (D.N.J. Mar. 1, 2011).......................................... 7

**STATUTES**

29 U.S.C. § 1001 .............................................................................................................................. 2
42 U.S.C. § 300gg-5 ................................................................................................................. 13, 14

**RULES**

Fed. R. Civ. P. 16 ............................................................................................................................. 8
Fed. R. Civ. P. 16(b)(4) .................................................................................................................... 6

Defendant Connecticut General Life Insurance Company and CIGNA Healthcare (collectively "CGLIC") submit this Memorandum of Law in Opposition to Plaintiff Montvale Surgical Center, LLC ("Montvale")'s Motion styled "Motion for Good Cause to File a Motion ] for Leave to File a "Second Amended Complaint."  As set forth below, we believe that this motion is more properly styled a Motion for Leave to File an Out-of-Time Motion for Leave to File an Amended Complaint and, for the reasons set forth, CGLIC respectfully requests that this Motion be denied.

## PRELIMINARY STATEMENT

The Court's decision on this Motion should be informed by two basic facts.  First, this case languished for months based upon the promise by Plaintiff's counsel that he would submit a revised pleading that adequately pled his theory that the manner in which CGLIC treated other, in-network medical providers afforded his client, an out-of-network provider, with a private cause of action.  A Motion to Amend was submitted (and granted on consent) but it did not address the allegations regarding this theory at all.  The present, successive Motion to Amend was filed well after the deadline set by the Court and Plaintiff's present Motion for Leave to Amend does not even attempt to set forth good cause to excuse this default.

Second, and to avoid any concern regarding the forfeiture of a valid claim, the new allegations contained in the Proposed Pleading[1] are based on the same underlying facts known by

---

[1]   Plaintiff has styled this the Proposed Second Amended Complaint.  As detailed below, there already was a proposed Second Amended Complaint that was the subject of the earlier Motion to Amend.  CGLIC consented to this earlier Motion to avoid unnecessary motion practice and it was granted by the Court [ECF No. 39].  Montvale never filed that 'Second' Amended Complaint, however.  To avoid confusion caused by Plaintiff's irregular mode of procedure, we adopt the term "Proposed Pleading" to identify this, latest, second proposed 'Second' Amended Complaint.  In fact, counting the original Complaint <u>the Proposed Pleading is the fourth pleading Plaintiff has submitted to the Court</u>.

both parties since the outset of this litigation and do not remotely set forth a valid cause of action.  The main substantive difference between this and prior pleadings is Plaintiff's citation of an "anti-discrimination" provision in the Patient Protection and Affordable Care Act ("PPACA").  Numerous reasons exist why this provision could never sustain the claim Plaintiff submits to this Court, but these need not be reached because the provision on which plaintiff relies was not effective until January 1, 2014, long after the claims at issue arose and long after the commencement of this litigation.  For reasons evident since at least the Court's Rule 16 conference held on December 18, 2013, plaintiff's in-network/out-of-network discrimination cause of action lacks any legal support whatsoever, plausibility and even simple logic.

For the foregoing reasons, CGLIC respectfully requests that the Court deny Plaintiff's Motion for Leave to File a Motion Out-of-Time for Leave to File an Amended Complaint.

## **STATEMENT OF FACTS**

The procedural history is one of lost opportunity to plead a futile claim.  This matter was filed in the Superior Court of New Jersey and removed to this Court pursuant to the Court's federal question jurisdiction, because the matter involves the Employee Retirement Income Security Act.  29 U.S.C. § 1001 et seq.  [ECF No. 1].  CGLIC moved to dismiss the original Complaint.  [ECF No. 13]  Plaintiff then filed an Amended Complaint (the "First Amended Complaint") as of right.  [ECF No. 21]  The amendment did not, however, state a viable claim as to those individual claims that are brought pursuant to plans governed by the Third Circuit's opinion in Pain & Surgery Ambulatory Ctr., P.C. v. Conn. Gen. Life Ins. Co., 532 F. App'x 209, 2013 U.S. App. LEXIS 18768 (3d Cir. Sept. 10, 2013).  In short, these plans, which govern a majority of the claims before the Court, do not provide coverage for facility fees to ambulatory surgical facilities, like Plaintiff, with fewer than two operating rooms or that are unlicensed.

On December 18, 2013, the Court held a Rule 16 conference with counsel. There, at the Court's invitation, we discussed the merits of the Plaintiff's lawsuit--an ERISA benefits action for coverage of medical treatment of Plaintiff's patients under medical plans administered by CGLIC. The undersigned pointed out, and the Court was indeed already aware, that Plaintiff is a single-room, unlicensed ambulatory surgical facility--a fact that is established in the pleadings themselves. We discussed the Third Circuit's Pain & Surgery ruling that the fees of such single-room, unlicensed facilities were not covered under CGLIC-administered plans, per unambiguous plan language. This language appears in the plans governing the majority of the claims at issue in this case. Thus, Pain & Surgery, directly on point, disposes of the bulk of the claims in this case.[2]

In response, Plaintiff's counsel raised a theory, incompletely framed in the existing pleadings, that CGLIC was treating other, single-room, unlicensed providers differently, and inconsistently with the plan language. It was then and remains now obscure how this fact, if established, could give Plaintiff a claim against CGLIC if, as seems to be decisively established by Pain & Surgery, CGLIC accurately applied the terms of the plans to Plaintiff's claims. No pleading before the Court advances any legal basis for such a cause of action and at that time Plaintiff's counsel supplied none.

At the Rule 16 conference, however, Plaintiff's counsel stated that he intended to file a second amended complaint with further support and elaboration of his "disparate treatment" claim. We discussed with Your Honor that any such amendment would have to be on motion and that we would oppose such a motion on the ground of futility of the amendment. It was

---

[2]   A minority of the plans at issue in this case do not have this restrictive language. The parties have colloquially referred to these as the "outlier" plans.

3

contemplated that the legal viability of plaintiff's "disparate treatment" theory could be examined in the context of a motion to amend.

Strangely, however, when Plaintiff filed its Motion for Leave to File a Second Amended Complaint, the proposed pleading did not modify the few references to Plaintiff's theory that appeared in the First Amended Complaint. See ECF No. 37. No additional facts nor any legal basis for the cause of action was added. In fact, the only difference in the new pleading was the addition of another patient and an increase in the alleged liability of CGLIC. This frustrated the plans that the parties and the Court discussed at the Rule 16 conference regarding how the case should proceed.

On mature consideration, however, CGLIC elected to consent to the filing of the Second Amended Complaint. As explained in our letter to the Court of May 5, 2014 [ECF No. 38], we intended, following the Court's grant of leave to amend and Plaintiff's filing of the Second Amended Complaint, that CGLIC would file a motion seeking dismissal of the Second Amended Complaint. This course was sensible because successful opposition of the motion to amend would leave the First Amended Complaint standing and require yet more motion practice to move the case ahead whereas consent would permit the Court to dispose of the bulk of this case with only one Motion.

The Court duly granted the Plaintiff's Motion for Leave to File the Second Amended Complaint. [ECF No. 39] But, to our surprise, Plaintiff never filed it. A telephone conference with the Court was scheduled for June 2, 2014, and CGLIC intended to raise this bizarre course of action at that time.

Mere minutes before the telephone conference with the Court was to begin on June 2, however, Plaintiff filed yet another Motion to Amend. [ECF No. 43] This filing came well after

4

the Court's set deadline for motion's to amend pleadings. See ECF No. 36 (setting April 16, 2014 as the deadline). The motion was procedurally defective, but it contained a draft of the Proposed Pleading that is the subject of the instant Motion. The Court terminated the application on its own motion as procedurally defective, and required that Plaintiff re-file the Proposed Pleading as a "good cause" motion, which in its current posture would be correctly captioned a Motion for Leave to File an Out-of-Time Motion for Leave to File an Amended Complaint.

On June 17, 2014, Plaintiff filed the instant motion, styled "Motion for Good Cause to File a Motion for Leave to File a Second Amended Complaint." [ECF No. 46] As noted below, despite the motion's title, no facts or even an argument supporting a finding of good cause appear in this submission to justify the filing of the motion to amend out of time. Aside from newly added counts of Promissory Estoppel, Negligent Misrepresentation, and Breach of Contract for Non-ERISA plans,[3] the only substantive addition to the pleadings that came before is the citation of PPACA, a statute that, (i) by its terms does not apply, (ii) creates no private cause of action in favor of Plaintiff, and (iii) was not effective at the relevant time. In fact, this latest attempt to amend does not remediate the basic flaw in Plaintiff's theory -- there is no legal or logical support for the theory of its claim. Therefore, the Court should deny Plaintiff's Motion.

---

[3] These three newly proposed counts are based on the same underlying facts that have been known by both parties since the outset of this litigation. Plaintiff avers no recently acquired information that could support allowing these new claims.

5

**LEGAL ARGUMENT**

**I. PLAINTIFF FAILS TO SATISFY THE HEIGHTENED "GOOD CAUSE" STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 16.**

    **A. Plaintiff Argues Its Motion Under the Wrong Standard.**

Plaintiff's brief in support of its Motion completely fails to address the correct standard to be applied in this case. Pursuant to Rule 16, a court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Thus, in order for a party to amend a pleading after the deadline for amending pleadings has passed, the party "must first demonstrate 'good cause' to amend the Rule 16 Scheduling Order." See Dimensional Commc'ns, Inc. v. Oz Optics, LTD., 148 F. Appx. 82, 85 (3d Cir. 2005) (acknowledging the Third Circuit's adoption of Rule 16(b)'s "good cause" standard for "determining the propriety of a motion to amend a pleading after the deadline has elapsed"); see also Eastern Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 340 (3d Cir. 2000) (recognizing that failure to satisfy Rule 16(b)'s "good cause" requirement is sufficient to deny a motion to amend filed after the deadline for amendments to pleadings).

Rule 16's "good cause" standard is premised on the Third Circuit's recognition that "'scheduling orders are the heart of the case management [and cannot] be flouted.'" Globespanvirata, Inc. v. Tex. Instruments, Inc., No. 03-2854, 2005 U.S. Dist. LEXIS 16348, at *10 (D.N.J. July 11, 2005) (alteration in original) (quoting Turner v. Schering-Plough Corp., 901 F.2d. 335, 341 n.4 (3d Cir. 1989), in turn quoting Koplove v. Ford Motor Co., 795 F.2d. 15, 18 (3d Cir. 1986)). "'The reason for this is simple — scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed.'" Id. (quoting United States v. Princeton Gamma-Tech, 817 F. Supp. 488, 497 (D.N.J. 1993)).

6

Here, it is beyond dispute that the "good cause" standard of Rule 16 applies to Plaintiff's Motion, as the deadline to move to amend the pleadings in this case expired on April 16, 2014. See ECF No. 36. Plaintiff is fully aware that the "good cause" standard of Rule 16 applies in this case, because that standard was confirmed by Judge Waldor during the parties' conference call with the Court on June 2, 2014. Despite Judge Waldor's instruction during the June 2 conference call to re-file the Proposed Pleading as a "good cause" motion, and despite including the phrase "Good Cause" in the title of its Motion, Plaintiff's submission lacks a single reference to the applicable "good-cause" standard. The reason for its failure to address Rule 16 is simple: Plaintiff knows it cannot satisfy its heightened "good cause" standard.

Instead, Plaintiff only analyzes its Motion under the less stringent standards of Rule 15. Rule 15(a), however, only governs motions to amend made prior to the deadline set by the Court for amendments to pleadings. Roggio v. FBI, No. 08-4991, 2011 U.S. Dist. LEXIS 91710, at *13 (D.N.J. Aug. 17, 2011). Where a motion to amend is made after the deadline for amendment, Rule 15(a) becomes applicable only after the "good cause" standard of Rule 16 has been satisfied. See Dimensional Commc'ns, Inc., 148 F. App'x at 85. As recently explained by a Court in this District, "[o]nly once the party has shown sufficient 'good cause' to amend the Rule 16 Order to extend the deadline will the Court evaluate the proposed amendment under Rule 15(a)," and "[i]f the moving party is unable to demonstrate 'good cause,' the Court will deny the motion and will not proceed to a Rule 15 analysis." Velto v. Reliance Std. Life Ins. Co., No. 10-1829, 2011 U.S. Dist. LEXIS 20933, at *9 (D.N.J. Mar. 1, 2011); see Joy v. Perez, No. 10-01636, 2011 U.S. Dist. LEXIS 5875, at *11 (D.N.J. Jan. 21, 2011) (Where plaintiffs "have not shown 'good cause,' the Court need not — and, in fact, cannot — proceed to an

7

analysis of whether prejudice exists and whether to grant leave to amend the Complaint under Rule 15(a).").

In its attempt to sidestep the "good cause" standard of Rule 16, Plaintiff argues (1) that it has not unduly delayed moving for leave to amend; (2) that CGLIC would not be prejudiced if Plaintiff was allowed to file their Second Proposed Amended Complaint; and (3) that the claims presented in the Proposed Pleading are not futile. Notwithstanding the fact that Plaintiff is patently incorrect on all of those points, these issues are irrelevant under the Rule 16 analysis because, as courts in this District have repeatedly recognized, "the absence of prejudice to the nonmovant is not a consideration under the good cause standard." Hutchins v. UPS, No. 01-1462, 2005 U.S. Dist. LEXIS 15625, at *8 (D.N.J. July 26, 2005) (citing Globespanvirata, Inc., 2005 U.S. Dist. LEXIS 16348, at *3); see also Trustees of the Local 464A UFCW Pension Fund v. Wachovia Bank, N.A., 2011 U.S. Dist. LEXIS 15176, at *9 (D.N.J. Feb. 15, 2011) ("[S]howing a lack of undue prejudice is not enough for Plaintiffs to prevail under Rule 16.").

**B.     Plaintiff Cannot Establish Good Cause Because Plaintiff Was Aware of All the Facts and Legal Theories Long Before This Motion Was Filed.**

Contrary to Plaintiffs' arguments, the focus of "good cause" inquiry under Rule 16 is not on undue delay, prejudice to Defendants or futility, but rather on "the diligence of the moving party." Hutchins, 2005 U.S. Dist. LEXIS 15625, at *8. It is well-established that the burden is on the Plaintiffs and that "[t]o establish good cause, the movant must show that 'despite its diligence, it could not reasonably have met the scheduling order deadline.'" Roggio, 2011 U.S. Dist. LEXIS 91710, at *14 (quoting Hutchins, 2005 U.S. Dist. LEXIS 15625, at *8); see Trustees of the Local 464A, 2011 U.S. Dist. LEXIS 15176, at *9-12; Globespanvirata, Inc., at *3; see also Fed. R. Civ. P. 16, Advisory Committee's Note, on Subdivision (b) ("The court may modify the

8

schedule on a showing of good cause if [the deadlines] cannot be reasonably met despite the diligence of the party seeking the extension.").

Examination of how Courts in this District evaluate proposed pleadings under the "good cause" standard reveals that "[t]he most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend." Joy, 2011 U.S. Dist. LEXIS 5875, at *11 (quoting Stallings v. IBM Corp., 08-3121, 2009 U.S. Dist. LEXIS 81963, at *47-48 (D.N.J. Sept. 8, 2009)). In fact, the Courts have repeatedly held that prior knowledge of the newly pled claim is fatal. E.g., Dimensional Commc'ns, 148 F. App'x at 85 ("Magistrate Judge Arleo found that Oz could not satisfy Rule 16 (b)'s good cause requirement because Oz was in possession of the facts underlying the proposed counterclaim well before the amendment deadline."); Trustees of the Local 464A, 2011 U.S. Dist. LEXIS 15176, at *10 ("[T]he information that forms the basis of the amended complaint was certainly available to and in the possession of the plaintiffs at the time the original complaint was filed."); Assadourian v. Harb, No. 06-896, 2008 U.S. Dist. LEXIS 66182, at *3 (D.N.J. Aug. 28, 2008) ("Plaintiff concedes that, 'prior to the Harb deposition[,] he was in possession of random and isolated documentary materials which seemed to support the proposed RICO claim amendments.'"); Prime Ins. Syndicate v. United Risk Mgmt. Servs., Inc., No. 03-1050, 2006 U.S. Dist. LEXIS 50670, at *5 (D.N.J. July 25, 2006) ("Plaintiff provided no reason for why it could not have asserted these new claims against Krauze within the requisite deadlines."); Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990) ("This is most definitely not a motion in which any of defendant's six proposed new affirmative defenses arose from recent discovery in the case.").

9

In Joy, where the plaintiffs filed a motion to amend two months after the deadline for motions to amend, the Court concluded that the plaintiffs had completely failed to demonstrate "good cause" under Rule 16 because "[n]owhere in their papers [did] Plaintiffs state that they did not know of the proposed causes of actions . . . at the time they filed their Complaint — or even prior to the . . . deadline in the Pretrial Scheduling Order." 2011 U.S. Dist. LEXIS 5875, at *12. The Court found it significant that "a review of the Complaint and the proposed Amended Complaint demonstrate[d] that Plaintiff knew of the existence of . . . the facts forming a basis for the proposed claims well before" the deadline for amendments. Id. The Court rejected the plaintiffs arguments in support of the motion to amend, noting that the plaintiffs "merely argue[d] generally without any factual support that the proposed amended complaint contain[ed] claims similar to those originally filed in the original Complaint, and that [the] claims ar[o]se from the same 'core facts and circumstances as the original complaint.'" Id. at *10.

Here, Plaintiff has made no attempt to assert that it has "good cause" to amend their Complaint after the deadline for amendments expired. That factor alone warrants denying Plaintiff's Motion. See Joy, 2011 U.S. Dist. LEXIS 5875, at *11 ("Plaintiffs make no attempt — and therefore fail — to demonstrate any 'good cause' to amend the Pretrial Scheduling Order to extend the deadline to file a motion to amend the Complaint."). Rather, Plaintiff, resting on self-serving contentions of lack of prejudice and undue delay, presents the Court with the Proposed Pleading which contains three new Counts against CGLIC and purports to alter the legal theory upon which its first Count is based. Yet, Plaintiff was in possession of all the necessary information to assert these claims prior to filing not only their Proposed Second Amended Complaint, but also their First Amended Complaint and Original Complaint. In fact, the only

new angle suggested in the Proposed Pleading is a legal theory discussed in person with the Court by counsel over six months ago.

The First Count of the Proposed Pleading, alleges an ERISA violation based on alleged treatment of in-network providers which Plaintiff claims amounts to unfair discrimination against it (despite the fact that Plaintiff's claims were accurately administered under the relevant plans). Plaintiff cites for the first time as grounds for this allegation a provision of the Patient Protection and Affordable Care Act ("PPACA"). Of course, Plaintiff's "disparate treatment" theory long pre-existed this filing; it was touted by counsel at the Rule 16 conference on December 18, 2013 and alluded to (though incompletely articulated) in Plaintiff's First Amended Complaint filed on March 22, 2013. No newly discovered facts at all are raised. Certainly no newly discovered facts are involved with Plaintiff's newly found (and, as discussed below, completely specious) PPACA theory. Despite this effort, Plaintiff cannot escape the legal principle that a different spin on the same underlying facts does not constitute "good cause" to amend a pleading after the amendment deadline.

The same can be said of Plaintiff's Proposed Counts Three, Four and Five for Promissory Estoppel, Negligent Misrepresentation, and Breach of Contract. Again, noticeably absent from Plaintiff's Motion is any argument that these claims are based on recently discovered information that was previously unavailable through due diligence. Indeed, Plaintiff's Original Complaint included a count of Negligent Misrepresentation against CGLIC, which Plaintiff later dropped when it filed its First Amended Complaint. [ECF Nos. 1, Ex. A and ECF No. 21].

      C.    **Production of the Summary Plan Descriptions was Timely and, In Any Event, Has Nothing to Do With the New Claims Asserted.**

Although Mr. Bronsnick, counsel for Plaintiff, submitted a Certification in Support of Plaintiff's Motion alluding to a supposed delay on CGLIC's behalf in its production of the

11

relevant Summary Plan Descriptions ("SPDs"), Plaintiff does not identify any newly learned facts as a result of this alleged delay that could potentially constitute a "good cause" showing. Regardless, the production of the SPDs came in ample time to permit timely amendment of the pleadings had they been relevant to any such submission.  Of course, they were not and Plaintiff's argument is a complete red herring.

In fact, Plaintiff's own language in the Proposed Pleading belies this argument. Tellingly, Count Three and Four of the Proposed Pleading state that "[r]esolution of [the promissory estoppel and negligent misrepresentation] claim[s] do[] not require a review or consideration of the Plan documents, as [these] cause[s] of action arise solely based on the representations made to Plaintiff by Defendants that are independent of whatever the Plan coverage may provide." See Proposed Second Amended Complaint ¶¶64 and 70.  Count Five of the Proposed Pleading alleges Breach of Contract as to the Non-ERISA plans, but Plaintiff has raised the same basic claim as an ERISA claim since the inception of this case.  There is nothing substantively new about this claim that would have depended on production of the Summary Plan Descriptions.

Finally, and in any event, the SPDs were produced with reasonable promptness in light of the volume of material and certainly in plenty of time for Plaintiff to file a timely Motion to Amend.  (Decl. of Wohlforth ¶¶ 2 and 3 (most of the SPDs were produced Feb. 19, 2014; the balance March 4, 2014)).  Montvale filed its previous Motion to Amend April 15, 2014 [ECF No. 37], well after the production of the SPDs.  As noted, Plaintiff has never successfully explained why that proposed Second Amended Complaint lacked the counts of the Proposed Pleading.

*   *   *

Simply put, the claims of the Proposed Pleading are based on the same underlying circumstances that existed and were known to all parties at the outset of this litigation. Plaintiff's argument is really that, because its Original, First Amended, and its first Second Proposed Amended Complaints [ECF Nos. 1, 21 and 37] failed to adequately state its disparate treatment theory, "good cause" exists for allowing yet another attempt at an amendment well after past the expiration date. See Thoman v. Philips Medical Systems, No. 04-3698, 2007 U.S. Dist. LEXIS 4990, at *29 (D.N.J. Jan. 24, 2007). This obviously does not comply with the Court's admonition during the telephone conference of June 2 that good cause must be shown for yet another, now out-of-time attempt to amend. Plaintiff presents no basis for this Court to find "good cause" for leave to amend a pleading. For the foregoing reasons, this Court should deny Plaintiff's Motion.

### D.     The Proposed Pleading is Futile.

Several layers of analysis, each fatal to Plaintiff's Motion, lie between the Court and the need to consider Plaintiff's post-11th hour citation of the Patient Protection and Affordable Care Act section that Plaintiff claims gives it standing to sue CGLIC because CGLIC treats other health care providers differently. For the information of the Court, however, we write to assure that Plaintiff's reliance on this statute is completely unfounded.

Plaintiff cites section 2706 of the PPACA, codified at 42 U.S.C. § 300gg-5. This section states:

> A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law. This section shall not require that a group health plan or health insurance issuer contract with any health care provider willing to abide by the terms and conditions for participation established by the plan issuer.

13

Id.  This section became effective for plan years beginning January 1, 2014, and it has no bearing whatsoever on claims like those at issue in this case that arose before that date, nor for plans, like all of the plans concerned in this case, that began before that date.  Act of March 30, 2010, P.L. 111-148 (codified as a note to 42 U.S.C. § 300gg-5).  Judge Salas of this District expressly so held earlier this year.  Neelendu Bose v. Horizon Blue Cross Blue Shield of N.J., 2014 U.S. Dist. LEXIS 43244, *29 (March 31, 2014).

Several other reasons exist why Plaintiff's citation of this section need not detain the Court.  It is not clear that it applies to Plaintiff at all.  For example, Plaintiff cannot act within the scope of its state license, as specified by the statute, when it has no license at all.  Where, ex hypothesi, the plan coverage is correctly applied as to Plaintiff (i.e., coverage is correctly denied pursuant to Pain & Surgery), it is hard to see how Plaintiff is suffering discrimination against it with regard to coverage, regardless of how other providers may be treated.  Informal legislative history suggests that the section was intended to protect naturopaths and other, alternative medicine providers, not unlicensed surgical facilities.

Finally, this statute grants no express right of action.  For reasons well beyond the scope of this brief, it is doubtful to the point of remoteness that any federal court would discover an implied, private cause of action in favor of individual medical providers to sue to force compliance with the statute.

None of these interesting questions need be resolved, however, because Section 2706 was not effective as of the times relevant to this lawsuit and this ends the inquiry.  Id.  If the Court were ever to permit an out-of-time motion to amend, that motion would founder on the futility of the Proposed Pleading.

## CONCLUSION

For all the foregoing reasons, CGLIC respectfully requests that the Court deny Plaintiff's Motion.

By:   <u>s/ E. Evans Wohlforth, Jr.</u>
      E. Evans Wohlforth, Jr.
      Elizabeth A. Irwin

**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500

*Attorneys for Defendant*
*Connecticut General Life Insurance*
*Company and CIGNA Healthcare*

Date:   July 17, 2014
        Newark, New Jersey