ANTHONY K. MODAFFERI, III & ASSOCIATES
*A Professional Corporation*

Anthony K. Modafferi, III
Tel. (201) 946-7100
Facsimile (201) 337-3043

**Via ECF**

March 23, 2015

Honorable Cathy L. Walder, U.S.M.J.
United States District Court
King Fed. Bldg. & United States Courthouse
50 Walnut Street
PO Box 999
Newark, New Jersey 07101-0999

  *Re:* Montvale Surgical Center, LLC v. Conn. Gen Life Ins. Co., et al.,
    Civil Action No. 12:5257 (SRC) (CLW)

Dear Judge Waldor:

  I have read Mr. Reich's second letter filed with the Court last Friday evening, on March 20, 2015. ECF#61. Mr. Reich's letter reinforces and illustrates with spectacular clarity what I originally said to Your Honor in our telephone conference on October 16, 2014 that the Summary Plan Descriptions ("SPDs") produced by CGLIC did not constitute an authoritative statement of the plan terms governing the benefit claims.  We further addressed this in my letter of November 25, 2014 (ECF#53) in response to the statements contained in Mr. Wohlforth's letter to the Court dated November 24, 2014 (ECF #52), and again on December 5, 2014 (ECF#55); and lastly on February 9, 2015 (ECF#60) in response to our adversary's February 6, 2015 letter. ECF#59.

  This Court's decision ("TEXT ORDER: Plaintiff to docket supplemental interrogatories by 12/5/14. Defendant to respond by 12/31/14. Ordered by Magistrate Judge Cathy L. Waldor on 12/1/14. (tjg, ) (Entered: 12/01/2014)" (ECF#54)) to allow plaintiff's discovery requiring that the

Honorable Cathy L. Walder, U.S.M.J.
United States District Court
March 23, 2015, Page 2 of 9

defendant, Connecticut General Insurance Company ("CGLIC") acting as a claims administrator and

agent to certain plans, prove that the plans themselves delimit the actual benefit set forth in CGLIC's

form SPD is supported by the United States Supreme Court's decision in *CIGNA v. Amara*, 131 S.

Ct. 1866 (2011). See CGLIC's admission in *Connecticut Life and Insurance Company v. Roseland*

*Ambulatory Surgery, Center, LLC*, Civil Action No. 5941, filed April 1, 2013 (ECF#31) conceding

that the Supreme Court's decision in *CIGNA v. Amara*, 131 S. Ct. 1866 (2011): "rejected the

argument that the terms of an SPD could be enforced as a source of rights and obligations

independent and separate from (and in conflict with) the terms of the plan itself. 131 S. Ct. at 1877-

78." CGLIC Opp. Br. at 7-8.

> Justice Breyer stated in *Amara*, in pertinent part, that:
>
> Regardless, we have found that ERISA carefully distinguishes these roles. *See, e.g., Varity Corp.*, 516 U. S., at 498. <u>And we have no reason to believe that the statute intends to mix the responsibilities by giving the administrator the power to set plan terms indirectly by including them in the summary plan descriptions.</u> *See Curtiss- Wright Corp. v. Schoonejongen,* 514 U. S. 73, 81–85 (1995).
>
> ****
>
> For these reasons taken together we conclude that the summary documents, important as they are, <u>provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan for purposes of §502(a)(1)(B).</u> We also conclude that the District Court could not find authority in that section to reform CIGNA's plan as written.

*Amara* at 15. Emphasis added.

Indeed, Cigna affirmatively alleges in its Seventh Affirmative Defense to its Answer and

Affirmative Defenses that: "Plaintiff's eligibility for benefits is subject to the restrictions contained

in the policy or plan." See Cigna's Answer and Affirmative Defenses, filed May 24, 2013. ECF#30.

Honorable Cathy L. Walder, U.S.M.J.
United States District Court
March 23, 2015, Page 3 of 9

Given the Supreme Court's pronouncement that CGLIC may not **<u>"set plan terms</u>**

**<u>indirectly by including them in the summary plan descriptions"</u>** (*Amara* at 15),  this Court

correctly directed that CGLIC provide proof that the SPDs' limitation of coverage for one room

surgery centers are also reflected in plan documents.

Your Honor's decision to allow discovery is also supported by *Eugene S. v. Horizon Blue*

*Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) which illustrates that an insurer

acting a administrative service only contractor –agent fiduciary for a plan must prove that the

plan limits in its form SPD are also contained in the actual plan:

> <u>[A]n insurer is not entitled to deferential review merely because it</u>
> <u>claims the SPD is integrated into the Plan. Rather, the insurer must</u>
> <u>demonstrate that the SPD is part of the Plan, for example, by the SPD</u>
> <u>clearly stating on its face that it is part of the Plan. A contrary decision</u>
> <u>would undermine *Amara*.</u>

*Id*. at 1131-32. (Emphasis added.) Emphasis added.

Indeed, the 10th Circuit said it was error for the district court to have "improperly relied on

the language of the SPD" without first establishing that the language in the SPD was also set forth in

the plan, stating that: " We overlook this error because the SPD does unequivocally state that it is

part of the Plan, but the better practice is to proceed in the appropriate order of determination." *Id.* at

1131. What's more, the 10th Circuit acknowledged that an insurer is not entitled to deferential review

merely because it claims the SPD is "functionally equivalent" without demonstrating that the SPD is

part of the Plan because it would undermine *Amara*.

Crucially, CGLIC's attorney Mr. Reich who originally conceded that "[T]he operative

Plans in most cases are not the current Plans," in his letter to Your Honor dated February 6, 2015

Honorable Cathy L. Walder, U.S.M.J.
United States District Court
March 23, 2015, Page 4 of 9

(ECF#59) now admits that:

\*\*\*

> As noted in our February 6 letter, all but a few of the patient dates of service at issue occurred in 2009, 2010, and 2011, such that, in many cases, **the relevant plan documents are not those currently in force but, instead, are four, five, or six years old**.

\*\*\*

> Moreover, as previously discussed, CGLlC has very few of the 'actual' plans in-house, and the process of obtaining these documents from its clients has proven quite time-consuming. Further complicating that process is the fact **that 'actual' plan documents are not routinely used (if at all) in day-to-day benefit determinations, which has led to confusion among clients as to what they are being asked to provide**, causing yet more delay.

\*\*\*

> **Finally, some of CGLIC's clients are unwilling to turn over their 'actual' plan documents voluntarily.**

\*\*\*

Letter from Kevin Reich, Esq. to Honorable Cathy Waldor, U.S.M.J., dated March 20, 2015.

ECF#61. Emphasis added.

CGLIC concedes that this is "an ERISA case seeking benefits under some 42 benefit plans administered by CGLIC." *See,* Evans Wohlforth's letter to Your Honor, dated November 24, 2014 at page one. ECF#52.

Because it is apparent from Mr. Reich's two pieces of correspondence that:" the relevant plan documents are not those currently in force but, instead, are four, five, or six years old;" and the "'actual' plan documents are not routinely used (if at all) in day-to-day benefit determinations," and that at least some of "CGLIC's clients are unwilling to turn over their 'actual' plan documents voluntarily," CGLIC has failed to demonstrate that the SPDs are part of the Plans.

Honorable Cathy L. Walder, U.S.M.J.
United States District Court
March 23, 2015, Page 5 of 9

In order to establish that the SPDs coverage limitation with respect to single room surgery centers were incorporated into the plans, CGLIC and the Plan sponsor would have to have provided notice to the plan enrollees in accordance with ERISA notice requirements which it plainly did not due. Any change to a plan that materially affects the design or administration must be reported to plan participants in a "summary of material modifications" (SMM). It must be distributed within 210 days after the end of the plan year in which the modification took place. If the modification is a reduction in group health benefits, the SMM must be distributed to all plan participants within 60 days of the date the change is made. See Department of Labor FAQ –

> "The **Summary of Material Modification (SMM)** apprises participants and beneficiaries of changes to the plan or to the information required to be in the SPD. The SMM or an updated SPD for a retirement plan must be furnished automatically to participants within 210 days after the end of the plan year in which the change was adopted." http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html

> See also, 29 CFR Part 2520 Amendments to Summary Plan Description Regulations; Final Rule.

> **Summary Annual Reports (SAR)** tell participants about the financial status of the plan. Any plan that files a Form 5500 must provide its participants with an SAR within nine months of the end of the plan year. The SAR summarizes the 5500 information and advises participants that the 5500 has been filed and is available for inspection upon request. As with the other plan documents, failing to provide the SAR can result in penalties to the plan administrator

> **Existing wrap SPDs**, **Summaries of Material Modification (SMM)** prepared by the plan sponsor; and the plan's contract with the insurer, commonly referred to as the administrative service contract, and any amendments. "Wrap" There are two types of wrap documents. The first is called a mega-wrap document, which has two purposes. The first purpose of the mega-wrap document is to wrap the required ERISA language around a carrier's certificate of coverage. The second purpose of the mega-wrap document is to combine or bundle many employer-sponsored plans into a single plan. The main reason that an employer would want to combine multiple plans into a single plan is that it simplifies their Form 5500 filing. If the employer is large and has several separate plans subject to filing, it has to file multiple Forms 5500. If the employer uses a mega-wrap document to combine them into one plan, it only files a single Form 5500. However, there are other considerations with using a

Honorable Cathy L. Walder, U.S.M.J.
United States District Court
March 23, 2015, Page 6 of 9

mega-wrap document. If an employer is close to 100 participants on one or more plans, the employer may not want to combine plans into a single plan, because it may have to file a Form 5500 for a plan that would otherwise not be subject to filing. http://www.mha-ins.com/news-updates/more-news-update/august-2011/m.blog/182/what-is-an-erisa-wrap-document-and-how-does-it-differ-from-a-regular-plan-document

**Internal documents** that describe benefits (such as initial enrollment and open enrollment materials, election change forms, claims forms, new employee information, and policies and guidelines for human resources and supervisory employees);

**Benefit descriptions** prepared by an employer- or third-party administrator (TPA) (if self-funded); other TPA documents (e.g., a description of the TPA's claims procedures, a TPA services contract addressing which party is responsible for different aspects of plan administration).

Whether or not in litigation, under Department of Labor ("DOL") regulations 29 C.F.R. § 2560.503-1(g) (1977), the "pertinent documents" that are required to be produced to an ERISA plan participant or beneficiary are defined in their scope in the Preamble of the regulations.

In the Preamble to the regulations, the Department of Labor expressed its view that "the participant must be allowed to see *all* plan documents and *other papers which affect the claim*," and that includes the right of the participant to "review *pertinent documents relating to* the denial." 42 Fed. Reg. 27426, 27426-27 (May 27, 1977). "Pertinent documents" are therefore "*all*" papers which affect or relate to the claim, and thus include documents or writings that relate to or reflect the claim investigation, procedures used, retention of "experts" or other reviewers, analysis performed, conclusions reached, and documents that reflect the decision making process including how evidence was weighed and treated and evaluated, relevant to the requirement of "reasoned and principled decision making." *See also*, 1998 ERISA LEXIS 24, pp.1-2 (Aug. 6, 1998) addressing 41 Fed. Reg. 36281 (Aug. 27, 1976) and "pertinent documents" under 29 C.F.R. 2560.503-1(g) ("[C]laimants

Honorable Cathy L. Walder, U.S.M.J.
United States District Court
March 23, 2015, Page 7 of 9

must be provided access to **all** of the information present in the claims record, whether or not that

information was relied upon by the plan in denying the claim and whether or not that information

was favorable to the claimant. Such full disclosure. . . is what the 1977 regulation contemplated,

[and] is necessary to enable claimants to understand the record on which the decision was made");

29 C.F.R. § 2560.503-1(g)(1)(v)(A) (requiring plan administrator to provide written notification if

"an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse

determination" and requiring the disclosure of such information upon request); 29 CFR 2560.503-

1(h)(2)(iii) (requiring as part of a full and fair review of a benefit denial, disclosure of all documents

"relevant" to a beneficiaries claim for benefits; a document is "relevant" as defined in section

(m)(8)(ii) if, *inter alia,* it "[w]as submitted, considered or generated in the course of making the

benefit determination, without regard to whether such document, record, or other information was

relied upon in making the benefit determination.").

     As I have previously noted: In order for Cigna/CGLIC to model the plan benefits CIGNA

would have to have reviewed each plan in force to negotiate the administrative service contract and

create programming for claims administration.

     We anticipate there are emails and communications for each plan negotiation. My client is

entitled to robust discovery to show that Cigna/CGLIC's attempts to limit the plan benefit by

claiming that the language of its own SPDs limiting such coverage is in effect functionally

equivalent to that of the plans is misleading and patently false, as Mr. Reich's candid correspondence

demonstrates. Despite the facts he admits the conclusions he makes are nothing more than

speculation and conjecture as to the plan benefits.

Honorable Cathy L. Walder, U.S.M.J.
United States District Court
March 23, 2015, Page 8 of 9

Of course, it may be that several of the plans actually use "wrap" provisions – a term of art

for those situation where a plans expressly incorporate the SPD by reference.  On the other hand,

Cigna/CGLIC does not get to pick and choose or dictate what discovery the plaintiff provider and

assignee is entitled to, especially, when Counsel's February 6, 2015 correspondence to Your Honor

demonstrates with spectacular clarity that CGLIC falsely contended that the plans here did not

provide coverage for the plaintiff's services when we now that CGLIC's attorneys have not seen the

plans or other documents and do not even know what the actual plan benefits are in this action.

As assignee, Montvale is entitled to all discovery that the enrollee would be entitled to as

Judge Debevois recently said in *Premier*.

> This is why, as the Court of Appeals has noted, that "[a]lmost every circuit to have
> considered the question has held that a health care provider can assert a claim under
> § 502(a) where a beneficiary or participant has assigned to the provider that
> individual's right to benefits under the plan." *Pascack Valley Hosp. v. Local 464A
> UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 401 n. 7 (3d Cir.2004). And this
> Court has, on multiple occasions, agreed. *See, e .g., N. Jersey Brain & Spine Ctr. v.
> Conn. Gen. Life Ins. Co.,* No. 10–4260, 2011 WL 4737067, at *5 (D.N.J. June 30,
> 2011) ("[A]n assignment of a right to reimbursement logically includes the right to
> judicially enforce the reimbursement rights, and thus, creates a valid assignment
> under ERISA." (citations omitted)); *Ambulatory Surgical Ctr. of New Jersey v.
> Horizon Healthcare Servs. Inc.,* 2008 WL 8874292, at *3 (D.N.J. Feb. 21, 2008)
> ("[I]t would be illogical to allow" a healthcare provider "to be a valid reimbursement
> assignee but not allow it to judicially enforce that right."); *Wayne Surgical Ctr. LLC
> v. Concentra Preferred Sys., Inc.,* Civil Action No. 06–928, 2007 WL 2416428
> (D.N.J. Aug. 20, 2007) ("[I]t is illogical to recognize that," a healthcare provider, "as
> a valid assignee has a right to receive the benefit of direct reimbursement from its
> patients' insurers but cannot enforce this right.").

*Premier Health Center, P.C. v. UnitedHealth Group*, Slip Copy, 2014 WL 4271970 (D.N.J.)
August 28, 2014.

Honorable Cathy L. Walder, U.S.M.J.
United States District Court
March 23, 2015, Page 9 of 9

      Accordingly, based upon the foregoing, we respectfully request that CGLIC be ordered to

turn over all of this information with respect to each plan, and for those plans where there is no

benefit limitation concede that the plans are not functionally identical and do not limit coverage

according to the SPD language which CGLIC has interposed in this case.

                        Respectfully Yours,

                        ANTHONY K. MODAFFERI, III &
                        ASSOCIATES, P.C.

        BY:   *s/ Anthony K. Modafferi, III*_____
                ANTHONY K. MODAFFERI, III, ESQ.

cc:    Kevin R. Reich, Esq.
       E Evans Wohlforth, Esq.
       Andrew R. Bronsnick, Esq.