UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVALE SURGICAL CENTER, LLC A/S/O various "PATIENTS", <br><br> Plaintiffs(s), <br><br> v. <br><br> CONNECTICUT GENERAL LIFE INSURANCE COMPANY D/B/A CIGNA, CIGNA HEALTHCARE OF NEW JERSEY, INC.; ABC CORP. (1-10) (Said names being fictitious and unknown entities), <br><br> Defendant(s), | CIVIL ACTION NO.: 2:12-cv-05257-SRC-CLW <br><br><br><br> **CIVIL ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37 SEEKING THAT MATTERS BE TAKEN AS TRUE AND FOR SANCTIONS, AND FOR OTHER RELIEF**

**MASSOOD & BRONSNICK, LLC**
50 Packanack Lake Road East
Wayne, New Jersey 07470-6663
(973) 696-1900
Attorneys for Plaintiff

**THE AGRESTA FIRM PC**
24 Grand Ave
Englewood, NJ 07631
(201) 399-6891
Attorneys for: Plaintiff

*Anthony K. Modafferi, III, Esq.*
*Andrew R.Bronsnick, Esq.*
*on the brief*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37 SEEKING THAT MATTERS BE TAKEN AS TRUE AND FOR SANCTIONS, AND FOR OTHER RELIEF**

Plaintiff, Montvale Surgical Center, LLC as assignee of benefits from various Patients (hereinafter "Montvale" or "Plaintiff") and through its undersigned counsel, submits this memorandum of law in support of Plaintiff's motion:

(1) Directing that the following designated facts be taken as true:

    A. None of the Plans at issue in this action exclude coverage for single – room, unlicensed surgical facilities;

    B. Plaintiff's Single-room, unlicensed surgical facility is covered under the plans.

(2) Prohibiting the Defendant from opposing Plaintiff's allegation in Paragraph 16 of its Second Amended Complaint, filed March 22, 2013 (ECF#21) that: Defendants' Plans with the Patients contain provisions that permit payment on behalf of these patients for outpatient facility services at the surgical facilities.

(3) In the alternative, striking Defendant's Answer, until such time as (i) Defendant provides responsive answers to each of Plaintiff's Interrogatories; and further meets its burden of going forward with proof demonstrating that the language excluding coverage in the form SPDs also appears in each of the plans at issue, and, (ii) produces all documents requested in Plaintiff's Request for Production of Documents;

(4) Ordering that Defendant make payment of the reasonable expenses, including attorney fee's caused by Defendant's Failure to provide information in the Plaintiff's interrogatories.

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff is an out-of-network ambulatory surgical center, asserting the right to recover payment for medical procedures billed to Defendants.

A threshold and material issue is whether the benefit limitations, which CGLIC says appear in its form SPDs, also appear in each of the 41 plans in this action. To date, Defendant has utterly refused to engage in discovery while gratuitously advising the court that any delays

are the fault of the Plaintiff; failed to answer court ordered interrogatories, or produce any documents in discovery despite citing to legal authority that clearly states that an insurer must demonstrate that limitations in SPDs also appear in the plans themselves as an initial matter.

On December 1, 2014 as a result of a conference call discussing these issues, this Court ordered that Plaintiff serve discovery centered on production of plan and other information which would demonstrate that the plans contained the benefit limitation set forth in CGLIC's SPD. The Court also ordered that both the discovery demands and the responses were to be electronically filed.

Despite this Court's directive to file its responses no later than December 31, 2014, thumbing its nose at this Court and the Plaintiff, defendant, through its attorneys, filed unsigned and unverified responses **objecting on relevance grounds** to the very questions which the Court directed Plaintiff's demands to focus on during the conference call as to whether the plans contained the same plan benefit limitations as set forth in the form SPD. As of the date of this writing Defendant's counsel's prepared responses remain unsigned and unverified by the Defendant.

The best evidence that Defendant cannot demonstrate that the exclusionary language in its form SPD does not appear in the plans themselves comes from it own mouth.

Over the course of several months, Defendant wrote to the Court detailing how it was having difficulties producing its self-serving sample of plans; that many of the plans were in archive and in effect CGLIC was not administering benefits according to plans in effect for dates of service in issue, and not surprisingly many plan sponsors were not voluntarily cooperating with CGLIC.

This is not an isolated incident of vexatious litigation tactics by CGLIC.

In fact, ever since CGLIC walked out of the proceedings in United States Supreme Court in *CIGNA v. Amara*, 131 S. Ct. 1866 (2011), CGLIC has ignored the Supreme Court's admonition that it may not "set plan terms indirectly by including them in the summary plan descriptions."

CGLIC has continued to mislead both unsuspecting plan member and provider attorneys and court's by employing improper litigation tactics that begin with an attempt to pressure attorneys into stipulating that CGLIC's SPD benefit limitations also appear in the Plans, albeit without ever producing critical factual information which would establish this fact. In those cases where the provider attorneys so stipulate the consequences are predicable. They usually lose. When provider attorneys and plan members press for such information they are met with disruptive litigation tactics as part of the overall obstructive litigation strategy in which CGLIC will self-servingly volunteer to produce a "sample" of plans, identifying plans which they hope will support their thesis and carefully discarding plans that do not in a further effort to obtain a stipulation that the Plan benefit excludes coverage for the particular disputed procedure.

In all of those situations, as a result of shrewd litigation tactics, discovery has been short-circuited, neither the plaintiff or the court ever sees the plan, actual administration contract between CGLIC and the plan sponsor, claim adjudication manual, communications between CGLIC and the plan sponsor, and for plans where there has purportedly been a reduction in benefits, i.e., exclusion of coverage for example, the notification documents which are required by ERISA. Some litigant's figure this out after their case is dismissed on motion, and seek appeal in Circuit Courts, but it is by then too late because the Circuit Court must rely upon the record before it which either contains the magic stipulation of the parties, or the Circuit Court notes that the parties assume that the plan is identical to the CGLIC SPD. In one case, the Circuit Court has

criticized the failure of the insurers administering plan benefits for failing to demonstrate that the plans limit benefits as part of their burden of going forward, as failure to do so would undermine the Supreme Court's decision in *Amara*. In all such cases where the Plan does not contain coverage limitations, the enrollee's plan benefits are improperly reduced and the employee is then responsible for charges that his employer should have paid.

## PROCEDURAL HISTORY

On October 16, 2014, the Court initiated a telephone conference to address the status of the case. During the telephone conference, Plaintiff's counsel raised the issue regarding the fact that the Summary Plan Description (SPD) provided by CGLIC did not constitute the authoritative Plan terms governing the benefits at issue. Plaintiff's counsel argued that CGLIC was obligated to demonstrate under existing legal precedent that language it said appeared in each of the plan SPDs which purportedly excluded coverage for single –room, unlicensed surgical facilities also appeared in the actual Plan documents. CGLIC objected to this request. The Court conducted a telephone conference on December 1, 2014 wherein the parties discussed production of Plan and other documents at length.[1]

---

[1] The Parties entered a Joint Discovery Plan on December 16, 2013 in which they described their respective discovery issues. CGLIC announced its position to preclude discovery, but acknowledged that: "The only evidence relevant to this determination is the administrative claim file before the claims administrator when the determination was made and those documents setting forth the administrator's determination(s). To the extent Plaintiff seeks documents relevant to this issue in its position statement above, they will be provided shortly as part of the administrative record. . . .The key issue here is one of policy interpretation, i.e., **whether Plaintiff surgical facility is licensed and thus covered under Plan language**." The defendant has steadfastly failed to produce the administrative files or Plans. See Proposed Joint Discovery Plan, filed December 16, 2013. ECF#32. Discovery in ERISA cases is not limited to the claims file, especially where, as here, the Court will review the denial of benefits under a *de novo* standard of review since we claim the plans do not contain express language that would grant CGLIC discretionary authority to determine eligibility for benefits or to interpret the terms of the plan.

During the December 1, 2014 conference the Court permitted Plaintiff to docket interrogatories and document requests via ECF. Plaintiff docketed interrogatories and document requests on December 5, 2014 (ECF #55). CGLIC was ordered to provide responses by December 31, 2014.

As a result of the telephone conference, the Court directed that Plaintiff propound interrogatories relevant to showing that the subject plans excluded coverage for single –room, unlicensed surgical facilities. Defendant volunteered that it would provide a representative sample of the information sought for several of the Plans at issue, but this was not ordered, nor was it in lieu of Defendant's obligation to respond to the interrogatories.

On December 31, 2014 CGLIC filed unsigned and unverified responses to Plaintiff's Interrogatories. CGLIC docketed its responses to interrogatories as 56-1 and notice to produce at 56-2 on December 31, 2015. Declaration of Andrew R. Bronsnick, Exhibits A and B, respectively. CGLIC's responses were entirely nonresponsive. Instead, CGLIC <u>proposed</u> to produce a sample of five (5) Plans. Bronsnick Decl., Exhibit F.

On February 6, 2015 (ECF #59), CGLIC advised the Court that it could not produce a plan document including the alleged exclusion of coverage for single room surgical facilities, despite counsel's prior representation. Bronsnick Decl., Exhibit G.

On March 20, 2015 (ECF #61), CGLIC wrote to the Court and reiterated its difficulty in obtaining the documents requested and explained that they could not produce the Plans as requested. Bronsnick Decl., Exhibit I.

On March 23, 2015 (ECF #62) Plaintiff responded that the SPDs did not constitute an authoritative statement of the plan terms governing the plan benefits and noted that CGLIC had failed to demonstrate that the plans contained the language excluding benefits set forth in the

6

form SPDs.  Bronsnick Decl., Exhibit J. The Court conducted a telephone conference on April 22, 2015 setting deadlines for Plaintiff to file a motion the instant motion.

ARGUMENT

I. BECAUSE THE DEFENDANT HAS FAILED TO MEET ITS BURDEN TO ESTABLISH THAT THE PLANS EXCLUDE COVERAGE FOR SINGLE ROOM, UNLICENSED SURGICAL FACILITIES, THIS COURT SHOULD ENTER AN ORDER DESIGNATING THAT NONE OF THE PLANS AT ISSUE IN THIS ACTION EXCLUDE SUCH COVERAGE AND THAT PLAINTIFF'S SINGLE ROOM UNLICENSED SURGERY FACILITY IS COVERED UNDER THE PLANS

The purpose of propounding interrogatories and **docketing** them was addressed at the December 1, 2015 conference which was to establish that CGLIC had failed to meet **its initial burden** to establish that the limitations in the SPDs created by CGLIC for each of the 41 plans (fn. [2]) did not appear in the actual plans.

A. Defendant's Counsel's Three Letters to the Court After This Court Ordered Discovery Into the Plans Demonstrates That Defendant Is Unable to Demonstrate <u>that the Plans Also Contain Exclusionary Language Set Forth in the Form SPD.</u>

In fact, this representation to the Court and in filed pleadings (fn.[3]) was misleading because subsequent correspondence by CGLIC's counsel established that neither CGLIC nor its attorneys actually were in possession of facts that would allow them to make this representation at the outset. See Mr. Reich's letter to the Court dated February 6, 2015 (ECF#59, Bronsnick Decl. Ex. G.), and Plaintiff's counsel's response on February 9, 2015 (ECF#60, Bronsnick Decl.

---

[2] CGLIC concedes that this is "an ERISA case seeking benefits under some 42 benefit plans administered by CGLIC." *See,* Evans Wohlforth's letter to the Court, dated November 24, 2014 at page one. ECF#52.

[3] Indeed, CGLIC affirmatively alleged in its Seventh Affirmative Defense to its Answer and Affirmative Defenses that: "Plaintiff's eligibility for benefits is subject to the restrictions contained in the policy or plan." See CGLIC's Answer and Affirmative Defenses, filed May 24, 2013. ECF#30.

Ex. H.), and Mr. Reich's letter of March 20, 2015 to the Court (ECF#61, Bronsnick Decl. I), and Plaintiff's response to Defendant's counsel on March 23, 2015. (ECF#62, Bronsnick Decl. J). Fn.[4].

CGLIC's attorney, Mr. Reich originally conceded that "the operative Plans in most cases are not the current Plans," in his letter to the Court dated February 6, 2015 (ECF#59).

Remarkably, in a second letter to the Court Mr. Reich admitted that:

\*\*\*

As noted in our February 6 letter, all but a few of the patient dates of service at issue occurred in 2009, 2010, and 2011, such that, in many cases, **the relevant plan documents are not those currently in force but, instead, are four, five, or six years old**.

\*\*\*

Moreover, as previously discussed, CGLIC has very few of the 'actual' plans in-house, and the process of obtaining these documents from its clients has proven quite time-consuming. Further complicating that process is the fact **that 'actual' plan documents are not routinely used (if at all) in day-to-day benefit determinations, which has led to confusion among clients as to what they are being asked to provide**, causing yet more delay.

\*\*\*

**Finally, some of CGLIC's clients are unwilling to turn over their 'actual' plan documents voluntarily.**

\*\*\*

Letter from Kevin Reich, Esq. to Honorable Cathy Waldor, U.S.M.J., dated March 20, 2015. ECF#61. Emphasis added. Because it is apparent from Mr. Reich's letters to the Court that: "the relevant plan documents are not those currently in force but, instead, are four, five, or six years old;" and the "'actual' plan documents are not routinely used (if at all) in day-to-day benefit

---

[4] Plaintiff initially addressed the obligation and corresponding duty of CGLIC to establish that the limitations set forth in its form SPDs also appeared in the actual plans in correspondence dated November 25, 2014 (ECF#53, Bronsnick Decl, Ex. E) in response to the statements contained in Defendant's counsel's letter to the Court dated November 24, 2014 (ECF #52, Bronsnick Decl., Ex. D), and again on December 5, 2014 (ECF#55).

determinations," and that at least some of "CGLIC's clients are unwilling to turn over their 'actual' plan documents voluntarily**," CGLIC has failed to meet its initial burden that the SPDs are part of the Plans.[5]**

CGLIC acting as a claims administrator and agent to certain plans, has the initial burden of showing that the plans themselves delimit the actual benefit set forth in CGLIC's form SPD. *CIGNA v. Amara*, 131 S. Ct. 1866 (2011).

> Justice Breyer stated in *Amara*, in pertinent part, that:
>
> Regardless, we have found that ERISA carefully distinguishes these roles. *See, e.g., Varity Corp*., 516 U. S., at 498. <u>And we have no reason to believe that the statute intends to mix the responsibilities by giving the administrator the power to set plan terms indirectly by including them in the summary plan descriptions.</u> *See Curtiss-Wright Corp. v. Schoonejongen,* 514 U. S. 73, 81–85 (1995).

---

[5] Indeed, in its March 20, 2015 letter addressed to the Court, CGLIC's attorneys could only point to two plans which it says address CGLIC's form SPDs, out of 41 plans at issue, stating that counsel for the Defendant "call[s] to Your Honor's attention" 2 plans, which it says, "contain provisions regarding the status of Summary Plan Descriptions and the terms set forth therein." Yet, counsel for the Defendant begrudgingly admits " only one of these "actual Plans" was operative for the patient date of service in question; the other did not become operative until after the patient was treated by the Plaintiff." In other words, counsel could only produce a single plan that it contends was "operative" for a date of service in question. For one of the two plans identified by CGLIC (CGLIC Montvale 4327 dated January 1, 2011 –unsigned), it points to language in Section 2.03 that provides that Benefit, Benefit Option, Benefit Plan - any of the benefits provided under the Plan through plan documents, summaries, certificates, agreements, policies and contracts listed herein, each of which is hereby incorporated by reference. Each Benefit is governed by its own terms, which shall prevail in the event of any conflict with the Plan." CGLIC-Montvale 4330. **Relevant portions attached to Bronsnick Decl. as Exhibit P---filed under seal.**But this provision by itself did not discuss benefit limitation language. CGLIC-Montvale 4358, effective January 1, 2005, the provision "Governing Documents," simply states that the plan and SPDs are governing plan documents under ERISA Section 402(a)(1), and that the Plan document will control in the event of a conflict as to eligibility of coverage. But again, there are no other documents provided. Indeed, CGLIC fails to identify the plan participant election of coverage form, which would show whether the enrollee elected the default benefit in the SPD or more covered benefits. See Section 3.6. CGLIC –Montvale 4366 at 9. Compare eligible health care expenses at Section 6.1 which do not exclude coverage for the services of the Plaintiff. CGLIC-Montvale 4376. **Relevant portions attached to Bronsnick Decl. as Exhibit Q---filed under seal.**

> \*\*\*\*
> For these reasons taken together we conclude that the summary documents, important as they are, <u>provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan for purposes of §502(a)(1)(B).</u>

*Amara* at 15. Emphasis added.

Given the Supreme Court's pronouncement that CIGNA may not **"set plan terms indirectly by including them in the summary plan descriptions"** (*Amara* at 15), this Court correctly directed that CGLIC provide proof that the SPDs' limitation of coverage for one room surgery centers are also reflected in plan documents when it directed that Plaintiff propound and docket discovery addressing these issues.

The Court's decision to allow discovery is also supported by *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) which illustrates that an insurer acting as an administrative service only fiduciary to a plan must prove that the plan limits in its form SPD are also contained in the actual plan:

> <u>[A]n insurer is not entitled to deferential review merely because it claims the SPD is integrated into the Plan. Rather, the insurer must demonstrate that the SPD is part of the Plan, for example, by the SPD clearly stating on its face that it is part of the Plan. A contrary decision would undermine *Amara*.</u>

*Id*. at 1131-32. (Emphasis added).

Indeed, the 10th Circuit said it was error for the district court to have "improperly relied on the language of the SPD" without first establishing that the language in the SPD was also set forth in the plan, stating that:

> Without first determining that the SPD was part of the Plan, the district court improperly relied on the language of the SPD. We overlook this error because the SPD does unequivocally state that it is part of the Plan, but the better practice is to proceed in the appropriate order of determination . . . . Although Mr. S. argues

10

> that he does not have access to the governing plan documents and cannot determine if such governing documents conflict with any grant of authority present in the SPD, Aplee. Br. 37–38, **he did not request a copy of any such documents during the administrative appeal process or in discovery. Nor did he ask the district court to delay ruling on cross-motions for summary judgment so that he could seek out any such documents.**

*Id*. at 1131-32. (Emphasis added.)

In fact, as the 10th Circuit noted, like other unsuspecting provider/enrollees, the enrollee in that case "did not request a copy of any such documents [the plans and associated documents] . . . in discovery. Nor did he ask the district court to delay ruling on cross-motions for summary judgment so that he could seek out any such documents." The 10th Circuit acknowledged that an insurer is not entitled to deferential review merely because it claims the SPD is "functionally identical" without demonstrating that the SPD is part of the Plan because it would undermine the Supreme Court's decision in *Amara*.

Despite this Court's admonition to produce evidence that the SPD limitations are also contained in the 41 plans, CGLIC has been unable to produce relevant plans and administrative files that it conceded were relevant in number 6 to the Rule 16 Joint Discovery Plan. CGLIC's attorneys stated that: "To the extent Plaintiff seeks documents relevant to this issue in its position statement above, they will be provided shortly as part of the administrative record. . . .The key issue here is one of policy interpretation, i.e., **whether Plaintiff surgical facility is licensed and thus covered under Plan language**." See Proposed Joint Discovery Plan, filed December 16, 2013 –Defendant's Position at #6. ECF#32.[6]

---

[6] In the Joint Discovery Plan, CGLIC said it contemplated filing a motion after producing "relevant SPDs," as opposed to the Plans themselves. See Proposed Joint Discovery Plan, filed December 16, 2013 at #5. ECF#32. But CGLIC abandoned this approach recently when it conceded in the conference before the Court on April 22, 2015 that such a motion would be

While CGLIC might try to limit its responsibility to produce information as to the plan benefit limitations actually set forth in the plans by arguing that it is entitled to a deferential standard of review, based upon CGLIC's own admissions, albeit adduced through the letters addressed to the Court by CGLIC's counsel[7], including the fact that plan sponsors will not cooperate with CGLIC; relevant plans are not available but in "archive," CGLIC has failed to meet its burden of demonstrating that one plan, let alone all 41 of the plans, contain express language that would (i) demonstrate that the purported SPD benefit limitations are part of the

---

premature until the plans were produced evidencing the relevant language limiting the benefits at issue here.

[7] In one of the letters to the Court Mr. Reich admitted that:

> CGLIC's search for "actual Plan" documents separate and apart from the Summary Plan Descriptions ("SPD") that have already been produced to the plaintiff is continuing. The process of obtaining such Plans has proven more complicated than anticipated, *first*, because the operative Plans in most cases are not the current Plans, such that CGLIC is searching for archived documents, and *second*, because the Plans in most cases reside with CGLIC's clients and are not in-house at CGLIC. CGLIC still intends, however, to follow through with its proposal to produce to the Court a sampling of actual Plans. Indeed, our notes of the December 1 telephonic conference with the Court indicate that Your Honor suggested a sample of seven Plans. Thus, CGLIC will endeavor to produce seven Plans rather than the five Plans proposed in our December 31 letter.

Letter from Kevin Reich, Esq. to Honorable Cathy L. Waldor, U.S.M.J., dated February 6, 2015. ECF#59.

CGLIC concedes that this is "an ERISA case seeking benefits under some 41 benefit plans administered by CGLIC." *See,* Evans Wohlforth's letter to Your Honor, dated November 24, 2014 at page one. ECF#52, Bronsnick Decl., Ex. D.  Because it is apparent from Mr. Reich's two pieces of correspondence that:" the relevant plan documents are not those currently in force but, instead, are four, five, or six years old;" and the "'actual' plan documents are not routinely used (if at all) in day-to-day benefit determinations," and that at least some of "CGLIC's clients are unwilling to turn over their 'actual' plan documents voluntarily," CGLIC has failed to demonstrate that the SPDs are part of the Plans.

Plan; and (ii) CGLIC refuses to produce any evidence demonstrating that the plans grant CGLIC discretionary authority to determine eligibility for benefits or to interpret the terms of the plan.[8]

### B. Defendant Failed to Answer Court Ordered Interrogatories, Electing Instead to File Unresponsive, Unsigned Interrogatories In Derogation of The Federal Rules of Civil Procedure.

Contrary to this Court's Order and the Rules of Civil Procedure requiring that the responding party sign responses to interrogatory and notice to produce documents, Defendant's failed to do so. The responses to the unsigned documents are appalling. See Rule 26(g)(1), and see Rule 26(g)(2) and (3) requiring a court to impose sanctions –the rule uses the word "must" when imposing sanctions under this rule.

---

[8] Defendant's inability to demonstrate that the plans do not include benefit limitations is admitted. This utter failure to meet its burden of coming forward with adequate evidence to meet its Seventh Affirmative Defense to its Answer and Affirmative Defenses that: "Plaintiff's eligibility for benefits is subject to the restrictions contained in the policy or plan." See CGLIC's Answer and Affirmative Defenses, filed May 24, 2013. ECF#30. These admissions raise more questions then answers. CGLIC could not have possibly known what the plans said at the time it made this representation in a filed pleading. Did counsel review other plans documents and discard or fail to disclose them, in effect spoliating evidence because it did not fit its narrative? Why did certain plan sponsors refuse to cooperate with the defendant? Who contacted the plan sponsors and what was said? Where are the documents between CGLIC and the plan sponsor, addressing the CGLIC's responsibilities such as the administrative service contract which would address CGLIC's discretionary authority to administer the plan benefits? Instead, we were told at the conference that with respect to some unidentified quantity of plans administered by CGLIC there are no plan documents, and we must accept counsel's representation that the SPD must be accepted by default.  Rather than obey this Court's order requiring the Defendant to answer the interrogatories propounded and docketed, counsel chose to conduct its own investigation, presumably to insulate the Defendant and produce what it says is a sample of 2 plans outside of this Court's actual order. ECF#54. In sum, as the two plans produced demonstrate, each plan is different. In fact, this representation to the Court and in filed pleadings was misleading because subsequent correspondence by CGLIC's counsel established that neither CGLIC nor its attorneys were actually in possession of facts that would allow them to make this representation at the outset. See Mr. Reich's letter to the Court dated February 6, 2015 (ECF#59, Bronsnick Decl., Ex. G), and Plaintiff's counsel's response on February 9, 2015 (ECF#60, Bronsnick Decl., Ex. H), and Mr. Reich's letter of March 20, 2015 to the Court (ECF#61, Bronsnick Decl., Ex. I), and Plaintiff's counsel's response to Defendant's counsel's letter on March 23, 2015. (ECF#62, Bronsnick Decl., Ex. J).

For example, although stating that it would turn over the plans purportedly containing the benefit limitations disputed in this matter as part of the administrative record, Defendant's response to specific relevant interrogatories requesting certified responses to relevant questions about the plans were opposed as "overbroad and unduly burdensome," and seeking "information not relevant to the claims or defenses in this case and not reasonably calculated to lead to the discovery of admissible evidence."

Finally Defendant further objected to the majority of these simple interrogatories on the grounds that they were "harassing." Of course, the responses went unsigned.

Thus, besides refusing the most basic questions, persons having knowledge of relevant facts (CGLIC response to Interrogatory 1 ECF#56-1); persons consulted with in answering interrogatories (CGLIC response to Interrogatory 2 ECF#56-1); statements obtained (CGLIC response to Interrogatory 3 ECF#56-1); Communications had with respect to the claims in the action (CGLIC response to Interrogatory 4 ECF#56-1); CGLIC refused to identify the names of witnesses based upon the work-product doctrine. *See* Rule 26(a) (e) (If a party fails to provide information or identify a witness, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, and may impose sanctions, including any of the orders listed in Rule 37(b)(A)(i)-(vi)).

Likewise, interrogatories requesting identity of recordings (no.6); details of meeting and identity of emails (no.7); and admissions (no. 8) were opposed based upon the same spurious reasons.

As to specific interrogatories requesting plan documents (Summary Plan Descriptions ("SPDs"); Administrative Service Agreement(s); Reimbursement policies (sometimes referred to as standard operating procedures –"SOPs"); documents reflecting CGLIC's rights and

responsibilities (contractual or otherwise); Explanation of benefits ("EOBs"); Appeal letter templates and other templates for member communications by plan with members) these were rejected on relevancy grounds, or because CGLIC or its attorneys said they were not calculated to lead to admissible evidence and were "harassing." CGLIC response to Interrogatory 9 ECF#56-1);

CGLIC ignored questions seeking production of documentary evidence for support of its specific affirmative defenses as "overbroad and unduly burdensome," and further on the grounds that they were "harassing." CGLIC response to Interrogatory 10 ECF#56-1);

More outrageous was CGLIC's outright refusal to demonstrate that it had discretionary authority to determine eligibility, which is the basis for its objection that the very questions exceeded scope of permissible discovery in ERISA actions.  When asked to produce documentary evidence of its discretionary authority it refused to do so as overbroad and unduly burdensome. CGLIC response to Interrogatory 10A ECF#56-1. The specific interrogatory stated:

> 10A.   Produce all documentary evidence  for your Twentieth Affirmative Defense that:
>
> The CGLIC Defendants have discretionary authority to determine Plaintiff's eligibility for benefits and its decisions were not arbitrary and capricious.

CGLIC refused to "describe the specific plan language in the actual plans as opposed to plan summaries," to support its "position that the Plan provides no coverage for free standing surgical facilities under terms and conditions of CGLIC administered Plans"  (CGLIC response to Interrogatory 11 ECF#56-1); and refused to identify communications between itself and plan sponsors (CGLIC response to Interrogatory 13 ECF#56-1); steps it took to advise enrollees that services were not covered in accordance with Statement of ERISA rights appearing in CGLIC's various SPDs. CGLIC response to Interrogatory 14 ECF#56-1.

When asked to "describe the specific plan language in each plan as opposed to plan summaries you provided in discovery that allows you to deny coverage for the services in dispute," Defendant objected to this Interrogatory on the grounds that it is overbroad and unduly burdensome, and on the grounds that it seeks information not relevant to the claims or defenses in this case and not reasonably calculated to lead to the discovery of admissible evidence, and of course that it was "harassing. " CGLIC response to Interrogatory 15. ECF#56-1.

CGLIC has failed to meet its burden of demonstrating that the plans limit or exclude coverage for one-room surgery centers set forth in its form SPD. CGLIC refuses to provide any evidence that the plans grant it discretion.[9]

Accordingly, this Court should grant Plaintiff's motion which is brought pursuant to Rule 37(b)(2)(A)(i)(ii) &(iii) for Defendant's failure to comply with this Court's Order directing that Defendant respond to interrogatories addressing discrete facts concerning whether the Plans at issue exclude coverage for single –room, unlicensed surgical facilities, and because the Defendant failed to disclose any information in its response to Plaintiff's court-ordered interrogatories; failed to identify witnesses, and failed to sign interrogatories in violation of Rule 26(g)(3); *see also*, Rule 37(c)(1)(A)&(C), and Rule 37(d)(1)(A)(ii).  This Court ordered that Plaintiff propound supplemental interrogatories pursuant to a telephone conference with the Court held on December 1, 2015.  See this Court's decision ("TEXT ORDER: Plaintiff to docket

---

[9] Plaintiff's rights are derivative, by assignment and supported by recent Third Circuit rulings again, involving this defendant, including *CardioNet, Inc. v. CIGNA Healthcare Corp.*, 751 F.3d 165 (3dCir.2014) (recognizing that a healthcare provider who receives an assignment of benefits from a patient becomes a beneficiary who may bring an action under ERISA), and *Premier Health Center, P.C. v. UnitedHealth Group,*  2014 WL 4271970 (J. Debevoise, U.S.D.J.) (rejecting insurer's arguments that the provider could simply balance bill the patients for amounts that went unpaid in favor of argument that providers are in a better position to seek relief under ERISA regarding claims assigned to them by their patients, because "providers ... are better situated and financed to pursue an action for benefits owed for their services.")

supplemental interrogatories by 12/5/14. Defendant to respond by 12/31/14. Ordered by Magistrate Judge Cathy L. Waldor on 12/1/14. (tjg, ) (Entered: 12/01/2014)" (ECF#54)).[10]

CGLIC has already told this court that it cannot produce evidence that the plans contain the limitation on coverage supporting its affirmative defenses and will not cooperate in discovery in any case **despite stating that it would produce the plans as part of the administrative record in the Rule 16 Joint Discovery Plan**.[11]

---

[10] The interrogatories and a notice to produce were docketed four days later on Friday, December 5, 2015 (as ECF# 55-1 and ECF#55-2 respectively) and CGLIC docketed its responses to interrogatories as 56-1 and notice to produce at 56-2 on December 31, 2015. Plaintiff's counsel indicated at the last conference on April 22, 2015 that more that four months later a representative of CGLIC had yet to sign the interrogatories in flagrant violation of the Rules of Civil Procedure and this Court's order requiring CGLIC to propound responses by December 31, 2015. Instead, counsel for the Defendant objected to every single interrogatory, including mundane questions related to identifying the persons with knowledge of relevant facts, as "unduly burdensome" *See e.g.*, CGLIC response to Interrogatory 1. ECF#56-1. These are obstructive litigation tactics. Refusing to respond by claiming every question is burdensome, failing to sign the interrogatories and then making misleading excuses is improper, and worse still, a waste of judicial resources. *See e.g.*, Rule 26(a)(1)A requiring parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information." See also, Rule 37 generally regarding failure to abide discovery rules and orders.

[11] Even assuming arguendo that Defendant's discovery is limited to the administrative record, the administrative record consists of all information in the possession of the Defendant that was utilized in reviewing the patient claims in issue. This includes claims/training manuals, policies and medical texts related to Defendant's claim and appeal process. Accordingly, the administrative record is any scrap of paper, electronic or hard copy that relates to the claim, whether for or against the claimant, or reflecting administrative procedures/process used by the administrator included in the Defendant's notes, chronologies, summaries, memos or communications. Whether or not in litigation, under Department of Labor ("DOL") regulations 29 C.F.R. § 2560.503-1(g) (1977), the "pertinent documents" that are required to be produced to an ERISA plan participant or beneficiary are defined in their scope in the Preamble of the regulations. In the Preamble to the regulations, the Department of Labor expressed its view that "the participant must be allowed to see *all* plan documents and *other papers which affect the claim*," and that includes the right of the participant to "review *pertinent documents relating to* the denial." 42 Fed. Reg. 27426, 27426-27 (May 27, 1977). "Pertinent documents" are therefore "*all*" papers which affect or relate to the claim, and thus include documents or writings that relate

Accordingly, this Court should enter an order:

A. Establishing that none of the Plans at issue in this action exclude coverage for single – room, unlicensed surgical facilities, and that therefore Plaintiff's Single-room, unlicensed surgical facility is covered under the plans.

B. Prohibiting Defendants from opposing Plaintiff's allegation in Paragraph 16 of its Second Amended Complaint, filed March 22, 2013 (ECF#21) that: Defendants' Plans with the Patients contain provisions that permit payment on behalf of these patients for outpatient facility services at the surgical facilities.

C. An award of attorney fees and expenses CGLIC should also be ordered

D. In the alternative, this Court should enter an order striking Defendant's Answer, until such time as (i) Defendant provides responsive answers to each of Plaintiff's Interrogatories; and further meets its burden of going forward with proof demonstrating that the language excluding coverage in the form SPDs also appears in each of the plans at issue, and, (ii) produces all documents requested in Plaintiff's Request for Production of Documents.

---

to or reflect the claim investigation, procedures used, retention of "experts" or other reviewers, analysis performed, conclusions reached, and documents that reflect the decision making process including how evidence was weighed and treated and evaluated, relevant to the requirement of "reasoned and principled decision making." According to the DOL website, (http://www.dol.gov/ebsa/publications/how to_obtain_docs.html), the complete plan documents include, among other things, (1) an Annual Report, which informs participants about the financial status of the plan, (2) a summary of material modifications, which describe changes made to the plan and changes in the information in the SPD, and (3) plan wrappers, if any. As noted by the DOL, plan sponsors are required to provide copies of these documents to plan participants or beneficiaries upon written request. In sum, the "administrative record" is defined as the "full" or "whole" record in existence at the time of the agency decision, and is *not* limited necessarily to those documents that have been compiled and submitted by the defendant in litigation as the purported 'administrative record' but "consists of all documents and materials directly or indirectly considered by the [] decision-makers." *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that its motion be granted in all respects.

                **MASSOOD & BRONSNICK, LLC**
                **Attorney for Plaintiff**

                */s/ Andrew R. Bronsnick*
**By:** _____
                **ANDREW R. BRONSNICK**

                **The Agresta Firm, P.C.,**
                **Attorneys for Plaintiff**

**By:**    */s/ Anthony K. Modafferi, III*
                **Anthony K. Modafferi, III, Esq.**

Dated:  May 26, 2015